806 F.2d 1169
 UNITED STATES of America
v.
ROSENBERG, Susan Lisa.
Appeal of Susan Lisa ROSENBERG, Appellant in 85-5360.
UNITED STATES of America
v.
BLUNK, Timothy.
Appeal of Timothy BLUNK, Appellant in 85-5361.
 Nos. 85-5360, 85-5361.
 United States Court of Appeals, Third Circuit.
 Argued Sept. 11, 1986.
Decided Nov. 28, 1986.
As Amended Dec. 4, Dec. 5, and Dec. 11, 1986.
Rehearing and Rehearing Denied In Banc
Denied Dec. 31, 1986.
 
 Susan V. Tipograph, Holmes & Tipograph, Mary K. O'Melveny (argued), Lubell and Lubell, New York City, for Susan Lisa Rosenberg.
 Marion Percell (argued), Thomas W. Greelish, U.S. Atty., Donald J. Fay, Chief, Appeals Div., Newark, N.J., for appellee.
 Mark Gombiner (argued), Peter Avenia, Gombiner & Avenia, New York City, for Timothy Blunk.
 American Civil Liberties Union of New Jersey, National Lawyers Guild--New Jersey Chapter, Newark, N.J., Center for Constitutional Rights, National Emergency Civil Liberties Committee c/o Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, for amici curiae.
 Before ALDISERT, Chief Judge, HIGGINBOTHAM and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 Susan Lisa Rosenberg and Timothy Blunk appeal their convictions and sentences before the United States District Court for the District of New Jersey on nine counts of possession of firearms, explosives and false identification documents. This case requires us to determine, inter alia, whether the district court abused its discretion in sentencing these defendants to the maximum prison terms provided by the applicable statutes, whether these sentences resulted from impermissible bias on the part of the district judge, and whether consecutive sentences properly may be imposed for possession of explosives in violation of 26 U.S.C. Sec. 5861(d) (1982) and for the carrying of explosives during the commission of a felony under 18 U.S.C. Sec. 844(h)(2) (1982). The American Civil Liberties Union of New Jersey, the National Lawyers Guild--New Jersey Chapter, the Center for Constitutional Rights and the National Emergency Civil Liberties Committee, concerned that the defendants' sentences may be related to their political beliefs, have submitted a brief to this court on the issue as amici curiae.
 
 
 2
 The district court's jurisdiction stemmed from 18 U.S.C. Sec. 3231 (1982); we have appellate jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1982). For the following reasons, we will affirm the judgments and sentences in all respects.
 
 I.
 
 3
 Defendants do not challenge the government's evidence. This evidence showed that on November 3, 1984, Susan Rosenberg rented a storage bin at a public storage facility in Cherry Hill, New Jersey. Identifying herself to the facility's manager with a New York driver's license issued in the name of "Barbara Grodin," Rosenberg provided several telephone numbers at which she could be reached, paid for the storage bin in cash, and received an entrance code number which would provide access to the facility. Rosenberg did not unload anything into the bin at that time.
 
 
 4
 Several days later, when the manager was not in the office, an employee rented out the bin that had been assigned to "Barbara Grodin" to another party. When the manager returned to the office, he requested the new party to remove his belongings from the bin. The new renter refused, however, and the manager reassigned "Barbara Grodin" to another storage bin and attempted to contact her to inform her that both her bin and her entrance code had been changed to reflect the reassignment. When the manager was unable to contact her using the phone numbers she had supplied, he wrote a letter to "Barbara Grodin" and sent it to the address listed on the driver's license Rosenberg had given him. Soon thereafter he received a phone call from the real Barbara Grodin who informed the manager that she had not rented a storage bin. Moreover, Ms. Grodin wrote the manager that her wallet, containing her driver's license, had been stolen. The manager suggested that Grodin contact the Cherry Hill police concerning the matter, which she did. After a number of phone conversations between Grodin, the manager, and the Cherry Hill police, the parties agreed that if Rosenberg returned to the storage facility the manager would contact the police.
 
 
 5
 On November 29, 1984, Rosenberg and Timothy Blunk drove up to the facility in a car towing a rented trailer. Unable to enter with the old access code, Rosenberg knocked on the office's window to request admission. The manager recognized Rosenberg as the woman who had identified herself as Barbara Grodin. The manager directed Rosenberg to a new storage bin, provided her with a new access code, and returned to the office to phone the police.
 
 
 6
 Officer Di Francisco responded to the call. After speaking with the manager, Di Francisco proceeded to the storage area where he observed the defendants covering certain items on the floor of the bin with opaque plastic. Di Francisco noted that one of the items appeared to be an ammunition box and that another item, a large tubular object, bore the clearly visible label "blasting agent." Di Francisco also observed that both Rosenberg and Blunk were wearing glasses and wigs. Di Francisco asked the defendants for identification, and both produced New York driver's licenses. Rosenberg's identified her as Barbara Grodin, and Blunk's was issued in the name of William Hammond. When Rosenberg was unable to provide Di Francisco with the correct birthdate on her license, she volunteered to retrieve additional identification from her car.
 
 
 7
 Di Francisco did not permit her to return to the car, but instead led the two outside the bin where they met with Officer Martin who had just arrived. Di Francisco told Martin to stay with Blunk while he and Rosenberg returned to the manager's office. At the office, Di Francisco called headquarters, confirmed that the license was stolen, and again asked Rosenberg for her birthdate. She gave him a date that was different from the one she had earlier given him, as well as different from the one on the license. At this point, the officer arrested Rosenberg and placed her in the rear seat of his car, drove back to the storage area, arrested Blunk, and placed him in Officer Martin's car.
 
 
 8
 Di Francisco then proceeded to defendants' car in an effort to locate the additional identification that Rosenberg mentioned. On the front seat of the defendants' car, Di Francisco found two purses each containing a fully loaded semi-automatic pistol with additional ammunition clips.
 
 
 9
 After obtaining a search warrant, the police searched the bin, discovering a stockpile of ammunition, weapons, explosives, and false identification documents. In particular, the bin contained twelve assorted guns, two of which--an Uzi 9mm. semi-automatic rifle and an Ithaca twelve-gauge shotgun with its barrel "sawed-off"--were required to be registered to defendants in the National Firearms Registration and Transfer Record under 26 U.S.C. Secs. 5861(d); nearly two hundred sticks of dynamite, more than one hundred sticks of DuPont Trovex, a high explosive, a wide array of blasting agents, blasting caps, batteries and switches; and hundreds of false identification documents, including various drivers' licenses, social security cards, and FBI and DEA identification badges.
 
 
 10
 On December 6, 1984, a federal grand jury returned an indictment charging Blunk and Rosenberg with conspiracy, firearms offenses, and possession of false identification documents. Trial commenced on March 7, 1985. From the beginning of the proceedings, it was evident that Blunk and Rosenberg styled themselves as "political prisoners" rather than criminal defendants. They insisted on being absent from most of the trial proceedings and directed their retained counsel to remain inactive during the trial. To accommodate them, the trial judge provided Blunk and Rosenberg with closed circuit television through which they could monitor the proceedings, and appointed a public defender to remain in the courtroom for the trial to protect the defendants' interests. Both defendants made opening statements to the jury in which they asserted that their conduct was justified by reference to "a higher body of laws." On March 17, 1985, the jury returned a verdict of guilty on all submitted counts. The court imposed the maximum prison sentence on each count and ordered that each sentence run consecutively.[1] The defendants' statements at sentencing indicated that their only regret was that they had not been successful.
 
 
 11
 Blunk and Rosenberg timely filed this appeal.
 
 II. SENTENCING ISSUES
 A. Length of Sentence
 
 12
 Appellants argue that the district court abused its discretion in imposing the maximum term of imprisonment provided by statute. Our standard of review over this claim is limited. It is well settled that absent procedural defects, an appellate court will not disturb the district court's sentence if it falls within the statutory limits. See Gardner v. Florida, 430 U.S. 349, 357, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977); United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); United States v. Matthews, 773 F.2d 48, 52 (3d Cir.1985); United States v. Felder, 744 F.2d 18, 20 (3d Cir.1984); United States v. Del Piano, 593 F.2d 539, 540 (3d Cir.) (per curiam), cert. denied, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). Blunk and Rosenberg invite us to find the required procedural defects in the trial court's alleged anticommunist statements and remarks concerning defendants' parole eligibility. For the reasons set out in our discussion of the defendants' bias claims, we conclude that the record does not support their contention.
 
 B. Bias
 
 13
 Appellants also argue that their sentences resulted from the district judge's bias or prejudice against them, and therefore that we should vacate their sentences and remand the matter for resentencing before a different judge. The proper procedure for disqualification for bias or prejudice is governed by 28 U.S.C. Sec. 144 (1982).[2] For the purpose of this statute, the alleged bias or prejudice must stem from an extrajudicial source rather than from facts which the judge has learned from his participation in the case. See United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); Beverly Hills Bancorp, 752 F.2d 1334, 1341 (9th Cir.1984). Recusal motions pursuant to this statute must be timely filed, contain a good faith certificate of counsel, and include an affidavit stating material facts with particularity which, if true, would lead a reasonable person to the conclusion that the district judge harbored a special bias or prejudice towards defendants. See generally United States v. Thompson, 483 F.2d 527 (3d Cir.1973). No such motion was here made.[3]
 
 
 14
 There is also a rarely invoked exception to Sec. 144's statutory procedure that requires disqualification when a judge displays "pervasive bias" towards defendants regardless of the source of the bias. See Three Mile Island Alert, Inc., 771 F.2d 720, 739 (3d Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1460, 89 L.Ed.2d 717 (1986); United States v. Meester, 762 F.2d 867, 885 (11th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985); Davis v. Board of School Commissioners, 517 F.2d 1044, 1051 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). Appellants argue that the district court's adverse decisions concerning bail and security, the court's antagonistic attitude toward defense counsel, its remarks concerning communism, and its letter to the Bureau of Prisons recommending against parole for defendants evidence such bias.
 
 
 15
 We do not believe that these allegations prove any bias against Blunk and Rosenberg, much less the pervasive bias necessary to disqualify the judge at this juncture. Adverse decisions alone do not support a finding of bias. See Meester, 762 F.2d at 885; International Business Machines Corp., 618 F.2d 923, 929-30 (2d Cir.1980); Botts v. United States, 413 F.2d 41, 44 (9th Cir.1969). The court's trial orders seem to us reasonable, and lacking in any indicia of bias. We are unable to discern in the record evidence of the alleged antagonism on the part of the court toward either of the defense attorneys.[4] As for the alleged bias against communism, the defendants cite the judge's comments during sentencing that "[t]he only advice I give you is that you read what an earlier generation of revolutionaries who have embraced Communism have written. 'The God that Failed.' Read what Arthur Koestler and other disillusioned ex-Communists have written. It may help you." This statement, by itself does not suggest a bias against Blunk and Rosenberg. In the context of the sentencing minutes, the remark is addressed to the defendants' lack of remorse for their conduct and declared intention to continue these activities once released. As such, the remark is directed toward the defendants' chances for a successful rehabilitation, a proper concern of the trial court. See United States v. Grayson, 438 U.S. 41, 47-48, 98 S.Ct. 2610, 2614, 57 L.Ed.2d 582 (1978).
 
 
 16
 Finally, appellants urge that the district judge's letter to the Bureau of Prisons recommending against parole for these defendants after ten years of imprisonment, a possibility provided by 18 U.S.C. Sec. 4205(a) (1982),[5] demonstrates bias towards them. We disagree. In this letter, the district judge reiterated his statement during sentencing that "it will be a terrible mistake if these defendants were to be released from prison after serving only 10 years if their attitude then is as it is now." As the letter itself indicates, the court drew this conclusion from the facts presented at trial together with his observation of the defendants' lack of remorse at sentencing. No charge of bias can be assigned to the court's recommendation.
 
 
 17
 In sum, in the context of this case, the district court's actions do not provide a basis for the operation of the pervasive bias exception.
 
 C. Proportionality
 
 18
 Blunk and Rosenberg maintain that the district court's sentence of fifty-eight years for each defendant violates the eighth amendment's guarantee against cruel and unusual punishment.[6] Appellants rely on the Supreme Court's decision in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) which held that a life sentence without the possibility of parole for the crime of uttering a "no account" check imposed under South Dakota's recidivist statute violated the eighth amendment.[7]
 
 
 19
 Appellants have not directed us to, nor have our own efforts uncovered, a federal case which has reversed a lower court's imposition of consecutive sentences under the eighth amendment. See, e.g., United States v. Golomb, 754 F.2d 86, 90 (2d Cir.1985) (collecting cases). Although the Solem Court admonished that "no penalty is per se constitutional," 463 U.S. at 290, 103 S.Ct. at 3009, the Court also cautioned that our scope of review for this claim is extremely limited, for "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." Id. at 289-90, 103 S.Ct. at 3009, quoting Rummel v. Estelle, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980) (emphasis added by the Solem Court); see Hutto v. Davis, 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d 556 (1982); Government of the Virgin Islands v. Ramos, 730 F.2d 96, 98 (3d Cir.1984); cf. United States v. Darby, 744 F.2d 1508, 1525 (11th Cir.1984), cert. denied, 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985) (scope of review "greatly restricted"). The Solem Court explained that appellate courts "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." 463 U.S. at 290, 103 S.Ct. at 3009. This principle of substantial deference in turn restrains us from an extended analysis of proportionality save in rare cases. Id. at 290 n. 16, 103 S.Ct. at 3009 n. 16.
 
 
 20
 We agree with the Fourth and Fifth Circuits that apart from Solem's particular factual context--a life sentence without the possibility of parole--an abbreviated proportionality review following the Solem guidelines satisfies eighth amendment demands. See United States v. Rhodes, 779 F.2d 1019, 1028 (4th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986); Moreno v. Estelle, 717 F.2d 171, 180 n. 10 (5th Cir.1983), cert. denied, 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984). These factors include: (i) a consideration of the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions. Solem, 463 U.S. at 292, 103 S.Ct. at 3010. Because defendants' crimes are federal and lack clear state analogues, our determination rests on the first two factors.
 
 
 21
 In analyzing the first factor, we look to "the harm caused or threatened to the victim or society, and the culpability of the offender." Id. at 292, 103 S.Ct. at 3010. Blunk and Rosenberg contend that because they were convicted of "possessory" offenses, the consecutive imposition of the maximum sentences for these offenses must necessarily be grossly disproportionate to their crimes. This, however, is not the test.[8] We agree with the district court that the harm threatened by defendants' possession of a cache of arms and explosives combined with defendants' in court statements expressing their continued willingness to use violent methods to achieve their goals justifies the sentence. There is no doubt that this is a severe sentence; but the deference due Congress in providing for such sentences and that due the district court's finding of the magnitude of harm threatened by defendants' conduct supports our conclusion that the sentence is appropriate. Cf. United States v. Kimberlin, 781 F.2d 1247, 1258 (7th Cir.1985). Moreover, there can be no doubt as to the culpability of Blunk and Rosenberg. Neither denied the conspiracy and possession charges during trial. Defendants instead chose to pin their defense on the revolutionary "justification" for their conduct.
 
 
 22
 With regard to the second factor, appellants have provided us with statistics designed to show that their sentences are greater than the average sentences imposed for other federal crimes and for weapons and explosives possession, and invite us to compare dissimilar crimes and sentences with theirs. Because we do not believe that this case warrants an extended eighth amendment analysis, we need not attempt to match defendants' sentences with the statistics. We hold that the sentences imposed are appropriate to the specific facts of this case and within the constitutional limits.
 
 III. POSSESSION OF EXPLOSIVES
 A. Cumulative Sentences
 
 23
 Blunk and Rosenberg also suggest that the court improperly pyramided their sentences by imposing consecutive sentences for Counts 2 and 5. Count 2 charged both defendants with the possession of an unregistered firearm in violation of 26 U.S.C. Sec. 5861(d) (1982), specifically the possession of blasting caps, switches, wire, and one hundred and ninety-nine sticks of dynamite.[9] Count 5 charged defendants with carrying explosives during the commission of a felony in violation of 18 U.S.C. Sec. 844(h)(2) (1982). The underlying felonies for this count were the possession of the sawed-off shotgun and the Uzi semi-automatic rifle which were the subject of Counts 3 and 4 of the indictment.
 
 
 24
 Courts are reluctant to impose two penalties for the same criminal conduct absent clear congressional intent otherwise, reasoning that doubts in the interpretation of criminal statutes "will be resolved against turning a single transaction into multiple offenses." Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). Thus, in United States v. Gomez, 593 F.2d 210 (3d Cir.) (in banc), cert. denied, 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979), we held that consecutive sentences could not be imposed under the Comprehensive Drug Abuse Prevention and Control Act for possession of a controlled substance with the intent to distribute and for the actual distribution when the convictions stemmed from the same transaction. In so doing, we observed that consecutive sentences in that case would undermine the Act's detailed penalty scheme and violate "the established rule of construction that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' " Gomez, 593 F.2d at 214, quoting Simpson v. United States, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). Similarly, in United States v. Gomberg, 715 F.2d 843 (3d Cir.1983), cert. denied 465 U.S. 1078, 104 S.Ct. 1440, 79 L.Ed.2d 760 (1984), we determined that cumulative sentences for a continuing criminal enterprise pursuant to 21 U.S.C. Sec. 848 (1982) and the substantive offenses comprising the enterprise could not be imposed under the Comprehensive Drug Abuse Prevention and Control Act because the structure of the penalties in the Act showed that Congress intended section 848 to operate exclusively for sentencing purposes. Gomberg, 715 F.2d at 851.
 
 
 25
 We find neither an ambiguity nor evidence of congressional intent prohibiting cumulative sentences in the instant case. Instead, we find that the language and legislative history of 18 U.S.C. Sec. 844(h)(2) clearly authorize the sentences here. The legislative history for this provision indicates that Congress intended to extend the "stringent provisions" of 18 U.S.C. Sec. 924(c) (1982), a nearly identical statute that provides for increased punishment for felons who carry or use a gun during the commission of a felony, to the area of explosives. See H.Rep. No. 1549, 91st Cong., 2d Sess., reprinted in 1970 U.S.Cong. & Ad.News 4007, 4046. Section 924(c) provides for enhanced sentences unless the underlying substantive offense was one that already provided for enhanced punishment where the felony was committed with a dangerous weapon. See Busic v. United States, 446 U.S. 398, 403, 100 S.Ct. 1747, 1751, 64 L.Ed.2d 381 (1980) (assault with a firearm); Simpson, 435 U.S. at 13 (bank robbery with a dangerous weapon). The Supreme Court's interpretation in these two cases rests in part on statements by the Act's sponsor that Sec. 924(c) would not extend to the particular offense in question. See Busic, 446 U.S. at 406, 100 S.Ct. at 1752; Simpson, 435 U.S. at 13, 98 S.Ct. at 913. Congress neither provided for enhanced penalties in the underlying offense for carrying an explosive device while possessing an unregistered firearm, nor expressed an intention in the legislative history that Sec. 844(h)(2)'s scope would not extend to such felonies. We therefore hold the consecutive sentences to be proper.[10]
 
 B. Lack of Relational Element
 
 26
 Appellants maintain that their conviction on Count 5, for carrying explosives during the commission of a felony (possession of firearms), must be reversed. Appellants contend reversal is justified because no specific connection was shown between the carrying of the explosives and the felony. Because this issue implicates the interpretation and application of a statute, our review is plenary. Universal Minerals, 699 F.2d at 101-02.
 
 
 27
 The basis for Count 5, 18 U.S.C. Sec. 844(h)(2), prohibits the "carr[ying of] an explosive unlawfully during the commission of any felony which may be prosecuted in a court of the United States...." No court has explicitly decided whether the statute requires the government to prove a connection between the explosive and the underlying felony. Cases involving Sec. 844(h)(2) indicate varying results. See United States v. Lopez, 586 F.2d 978, 979 (2d Cir.1978) (per curiam) (felony was assault and no indication explosives were connected to assault), cert. denied, 440 U.S. 923, 99 S.Ct. 1251, 59 L.Ed.2d 476 (1979); United States v. Tiche, 424 F.Supp. 996, 1000 (W.D.Pa.) (in general discussion of statute, court stated "All that is required is that the explosives were used in the commission of a felony...."), aff'd mem., 564 F.2d 90 (3d Cir.1977); United States v. Pliskow, 354 F.Supp. 369, 370 (E.D.Mich.) (defendant apparently used explosives in an attempted aircraft hijacking),aff'd mem., 480 F.2d 927 (6th Cir.1973).
 
 
 28
 The legislative history of Sec. 844(h) is similarly unilluminating. The section was part of Title XI of the Organized Crime Control Act of 1970. The impetus for Title XI was the recurring bombs and bomb threats during that period. Congress stated that: "The absence of any effective State or local controls clearly attest to the urgent need to enact strengthened Federal regulation of explosives." H.R. No. 1549, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Ad.News 4007, 4013. Title XI also was intended to strengthen federal criminal law with respect to the illegal use, transportation, or possession of explosives. Id. at 4011. Section 844(h) itself "carries over to the explosives area the stringent provisions of the Gun Control Act of 1968 relating to the use of firearms and the unlawful carrying of firearms to commit, or during the commission of a Federal felony." Id. at 4046.
 
 
 29
 Both sides rely on cases interpreting the Gun Control Act provision. Prior to its amendment, 18 U.S.C. Sec. 924(c) prohibited carrying a firearm during the commission of a felony. As amended (now Sec. 924(c)),[11] the statute now prohibits carrying a firearm during and in relation to the commission of a felony.
 
 
 30
 In United States v. Stewart, 779 F.2d 538 (9th Cir.1985), relied on by appellants, the court required a specific connection between the firearm and the underlying felony. The basis for the court's decision was that the legislative history to the 1984 amendment "strongly implie[d]" that the "in relation to" phrase did not affect the scope of the statute as originally written. Id. at 539-40. The court decided that the amending Congress recognized that the earlier Congress had intended to require such a relation. Id. at 540. The second case advanced by appellants, United States v. Robertson, 706 F.2d 253 (8th Cir.1983), is inapposite. The court reversed the conviction, not because the government failed to prove a connection between the firearm and the felony, but because the proof did not establish that the defendant was even carrying a gun on his person.
 
 
 31
 We find that the Stewart court's analysis of Sec. 924(c) is not helpful to our analysis of Sec. 844(h)(2). First, we do not find that the legislative history to the 1984 amendment "strongly implied" that the "in relation to" language did not affect the scope of the statute as originally drafted. At most, we find that the legislative history fails to explain why the "in relation to" phrase was added to the statute. See S.Rep. No. 225, 98th Cong., 2d Sess. 312-14, reprinted in 1984 U.S.Cong. & Ad.News 3182, 3490-92. Second, even if the Stewart court was correct in its analysis of why Congress amended Sec. 924(c), Congress has not seen fit to modify Sec. 844(h) in the same manner. Thus, even if Congress's subsequent pronouncements clarify previously enacted statutes, Congress's decision to amend Sec. 924(c), but not Sec. 844(h), is, at best, open to a multiplicity of interpretations.
 
 
 32
 Finding the legislative history to the 1984 amendment in this state, we return to the plain language of Sec. 844(h). Section 844(h)(2) by its terms only requires that the government show that the defendant unlawfully carried an explosive "during the commission of any felony." The plain everyday meaning of "during" is "at the same time" or "at a point in the course of." See, Webster's Third New International Dictionary 703 (1961). It does not normally mean "at the same time and in connection with...." It is not fitting for this court to declare that the crime defined by Sec. 844(h)(2) has more elements than those enumerated on the face of the statute. If Congress sees fit to add a relational element to Sec. 844(h)(2), it is certainly free to do so, in the same manner that it added a relational element to Sec. 924(c). Until such time, we will hold that Sec. 844(h)(2) has no relational element, and accordingly, we now hold that the district court correctly denied the defendants' motion to dismiss Count 5.
 
 IV. FIRST AMENDMENT ISSUE
 
 33
 Amici urge that we vacate defendants' sentences and remand for resentencing on the grounds that the sentences resulted from the trial court's adverse reaction to the defendants' statements advocating revolutionary social change. According to amici, the trial court imposed its sentences "at least partly" in retaliation for the defendants' political philosophy.
 
 
 34
 We agree with the courts that have considered the issue that the imposition of a sentence on the basis of a defendant's beliefs would violate the first amendment's guarantees. See United States v. Lemon, 723 F.2d 922, 937 (D.C.Cir.1983); United States v. Bangert, 645 F.2d 1297, 1308 (8th Cir.), cert. denied, 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 158 (1981); cf. Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978). A trial judge may consider a wide range of factors in fashioning a sentence to fit the crime and the individual defendant, however. See United States v. Tucker, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); United States v. Baylin, 696 F.2d 1030, 1038-39 (3d Cir.1982); 18 U.S.C. Sec. 3577 (1982).[12] Specifically, the sentencing judge properly may consider the defendant's amenability to rehabilitation and expressions of remorse for the crime committed when the judge selects an appropriate sentence. See United States v. Grayson, 438 U.S. 41, 47-48, 98 S.Ct. 2610, 2614, 57 L.Ed.2d 582 (1978); Bangert, 645 F.2d at 1308-09.
 
 
 35
 Although trial courts are not required to articulate their reasons for a particular sentence in this circuit, see United States v. Montoya, 612 F.2d 792, 793 (3d Cir.1980); United States v. Del Piano, 593 F.2d at 540, the district court, recognizing the value of the practice for appellate review, placed its reasons on the record.[13] The court specifically admonished the defendants that it was not imposing its sentence on the basis of their political views or remarks, stating,
 
 
 36
 [l]et me make this clear. You are not on trial here because of your beliefs and your statements. Unlike the Soviet Union, whose political faith you embrace as Communists, here you can believe and say what you want to. Your distorted rhetoric about this being a political trial is best described as "hogwash."
 
 
 37
 The court then proceeded to give its reasons for the sentences:
 
 
 38
 You purportedly think because you adhere to certain beliefs and political views you can, when the time comes, as you see it, unleash guns, ammunition, and explosives to kill and destroy. You can't. If all you did was denounce this country you'd be free. Under your philosophy here you could murder anyone you selected and do it with impunity, because you decided it was necessary to advance your Communist cause. You had two guns on the front seat of that car, to kill. In the trailer you had 600 plus pounds of explosives and dynamite, to kill and destroy. You carried a silhouette target of a man to practice your killing. You had books to aid you in using your arms.... In short, you are a present danger to the community, you show no remorse, all you promise with your conduct at this trial is that if and when released you'll kill the first time you perceive it to be justified.
 
 
 39
 The court's comments clearly show that the sentences it selected are based on its assessment of defendants' lack of remorse and potential for rehabilitation. We find that the record, and in particular, the sentencing minutes, do not justify amici's concern that the court imposed the sentences as a punishment for the defendants' exercise of their first amendment rights. Cf. Bangert, 645 F.2d at 1308 (trial court stated that its sentence was unrelated to defendants' political beliefs and placed proper reasons on the record).
 
 V.
 
 40
 Having considered defendants' contentions, and finding each without merit, we will affirm the judgment of the district court.
 
 
 41
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting in part.
 
 
 42
 Although I join the majority in rejecting the aggregate sentencing, eighth amendment and first amendment claims raised by appellants Rosenberg and Blunk, I respectfully dissent from its treatment of appellants' convictions and sentences on Counts 2 and 5 for illegally possessing explosives. Because the majority has disregarded central principles of statutory construction in upholding appellants' convictions and sentences for violating 18 U.S.C. Sec. 844(h)(2) (1982), I write separately to express my views.
 
 I.
 
 43
 In Count 5 of the indictment, appellants Blunk and Rosenberg were charged with violating Sec. 844(h)(2), which makes it a felony to "carr[y] an explosive unlawfully during the commission of any [federal] felony...." At the close of the trial, the district court denied appellants' motion to dismiss Count 5 on the ground that the government had failed to offer any proof of a relationship between the explosives illegally possessed by the appellants and any accompanying federal felony they may have committed. The district court also refused appellants' subsequent request that the jury be charged that it had to find that "some connection" existed between appellants' carrying explosives and their possession of unregistered firearms--i.e., that carrying explosives "played some role" in the latter crimes--to convict them under Sec. 844(h)(2).[1] After the jury convicted appellants on Count 5, the district court sentenced each of them to a ten year sentence, the maximum term prescribed by Sec. 844(h), such sentences to run consecutively to each appellant's other sentences. Because the trial court refused to instruct the jury as to what I find to be an essential element of this crime, appellants' convictions on Count 5 should be vacated. Accordingly, I dissent from the majority's holding. All criminal defendants, regardless of their ideology or the destructive potential of their crimes, deserve a fair reading of the applicable law.
 
 
 44
 My analysis begins with the plain language of Sec. 844(h)(2). Unlike the majority, I construe the statute's phrasing--its prohibition against carrying explosives unlawfully "during the commission of" a federal felony--as explicitly and rather clearly connecting the possession of illegal explosives to the perpetration of some other felonious act.[2] Appellants have not asked "this court to declare that the crime defined by Sec. 844(h)(2) has more elements than those enumerated on the face of the statute." Maj. typescript at 24. They have, rather, simply asked this court to give meaning to each of the words that Congress chose to use to define the elements of this crime. In my view, the majority amends a clear statute so as to eliminate an essential element of the crime that the statute expressly describes.
 
 
 45
 Even though the legislative history of Sec. 844(h)(2) is, as the majority notes, otherwise "unilluminating," id. at 21, the sparse history available to us supports my reading of the statute. The House Report for what became Sec. 844(h)(2) refers us to 18 U.S.C. Sec. 924(c)(2) (1982), the gun control statute that served as a model for Sec. 844(h),[3] and the legislative history of Sec. 924(c)(2), as viewed by the Ninth Circuit in United States v. Stewart, 779 F.2d 538 (9th Cir.1985), corroborates appellants' position. I respectfully submit that the Ninth Circuit's construction is correct.
 
 
 46
 Stewart determined that "the evident purpose" of the original Sec. 924(c)(2), which is identical in structure to the current Sec. 844(h)(2),[4] "was to impose more severe sanctions where firearms facilitated, or had the potential of facilitating, the commission of a felony." Id. at 540. Mr. Stewart was convicted of violating Sec. 924(c)(2) at a time when its prohibition still mirrored the language of Sec. 844(h)(2).[5] Between the time of Stewart's crime and his appeal to the Ninth Circuit, however, Congress amended Sec. 924(c)(2), replacing the word "during" with the phrase "during and in relation to."[6] In Stewart, the court thus ascertained the meaning of Sec. 924(c)(2) in light of the 1984 amendments thereto. The Ninth Circuit read the legislative history of the amendments to Sec. 924(c) as indicating that "the 'in relation to' language was not intended to create an element of the crime that did not previously exist, but rather was intended to make clear a condition already implicit in the statute." Id. at 539. Here, the majority rejects that conclusion, "find[ing] that the legislative history fails to explain why the 'in relation to' phrase was added to the statute." Maj. at 1178. This position ignores the logical explanation offered in Stewart: "because the amendment [also] eliminated the requirement that the firearm be carried unlawfully, the 'in relation to' language was added to allay explicitly the concern that a person could be prosecuted under section 924(c) for committing an entirely unrelated crime while in possession of a firearm." 779 F.2d at 539. The majority has, in other words, failed to note that Sec. 924(c) was amended in two interrelated ways; by disregarding one of the two amendments, the majority misconstrues what the amendment process as a whole tells us about the original intention underlying Sec. 924(c)(2).[7] Stewart 's reading of the legislative intent behind Sec. 924(c)(2), and its conclusion that Congress meant to require some proof that the firearm facilitated the underlying felony, convinces me that Congress included a similar relational element in the crime defined by Sec. 844(h)(2).
 
 
 47
 United States v. Robertson, 706 F.2d 253 (8th Cir.1983) (per curiam), which my colleagues dismiss as "inapposite," maj. at 1178, is indeed additional authority for appellants' position. While the Robertson decision did, as the majority observes, focus upon the meaning of the word "carries" in Sec. 924(c)(2),[8] its analysis and holding also had much to say about the statute's use of the words "during the commission of":
 
 
 48
 The Government produced no evidence that Robertson ever carried the weapon or that the weapon played any role in Robertson's seeking collection of the unlawful debt. Without some evidence showing that Robertson carried the weapon at some time in connection with the commission of the offenses charged, the Government's case on this count must fall.
 
 
 49
 706 F.2d at 256 (emphases added). As I read Robertson, there is simply no basis to conclude, as the majority does, that the court did not reverse the Sec. 924(c)(2) conviction "because the government failed to prove a connection between the firearm and the felony," maj. at 1178; even if the government had established that Mr. Robertson was carrying a gun on his person, it seems that a failure also to prove some connection between the firearm and felony would have moved that court to invalidate the conviction.
 
 
 50
 The very most one could claim, after reading the statutory language and reviewing the legislative history, is that the relational element of Sec. 844(h)(2) is ambiguous. While I obviously dispute such a claim, even it should not defeat appellants' attacks on their Count 5 convictions. A "time-honored tenet of statutory construction [declares] that ambiguous laws are to be strictly construed against the Government." United States v. Margiotta, 688 F.2d 108, 120 (2d Cir.1982), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). Accord Dowling v. United States, 473 U.S. 207, 105 S.Ct. 3127, 3132, 87 L.Ed.2d 152 (1985) ("Due respect for the prerogatives of Congress in defining federal crimes prompts restraint in this area, where we typically find a 'narrow interpretation' appropriate.") (quoting Williams v. United States, 458 U.S. 279, 290, 102 S.Ct. 3088, 3094, 73 L.Ed.2d 767 (1982)); Busic v. United States, 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (interpreting 18 U.S.C. Sec. 924(c)); Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955) ("when Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity"); United States v. Cotoia, 785 F.2d 497, 502 (4th Cir.1986) (same); Castaldi v. United States, 783 F.2d 119, 121 (8th Cir.1986) (applying the " 'rule of lenity[ ]' established in the Bell case"); United States v. Diaz, 778 F.2d 86, 88 & n. 2 (2d Cir.1985) (per curiam) (applying Margiotta to the interpretation of Sec. 924(c)); United States v. Waechter, 771 F.2d 974, 978 (6th Cir.1985) ("we are mindful of the thoroughly established principal [sic] that the conduct prohibited by a criminal statute is to be narrowly construed"); United States v. Anzalone, 766 F.2d 676, 680-81 (1st Cir.1985) (applying "the proposition ... that criminal laws are to be strictly construed"); United States v. Bushey, 617 F.Supp. 292, 298-99 (D.Vt.1985) (rejecting the government's broad reading of Sec. 924(c)). Cf. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 3283 n. 10, 87 L.Ed.2d 346 (1985) (rejecting the lower court's "rather convoluted" application of this "strict construction principle"). This "well-known" tenet is, as Chief Justice Marshall noted long ago, "perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle, that the power of punishment is vested in the legislative, not the judicial department."[9] United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820). Though the majority notes the precept of lenity, see maj. at 1177-1178, it fails to apply the teaching of this tenet. The majority appears to reason as follows: Since Sec. 844(h)(2) makes it a crime to carry explosives illegally in furtherance of a federal felony, it might as well make it a crime to carry explosives unlawfully even when they have nothing to do with any other federal felony one may be committing. As the majority sees things, in other words, a court must ignore any ambiguity in Sec. 844(h)(2) and read the felony it defines as broadly as possible until Congress sees fit to declare explicitly otherwise. Because this approach usurps the legislative function at the same time it abandons the judicial duty to interpret ambiguous criminal statutes with lenity, I dissent from this portion of the panel's holding.
 
 II.
 
 51
 I also dissent from the majority's treatment of appellants' cumulative sentencing claims. On their convictions under Count 2, appellants each received ten year sentences for possession of explosives in violation of 26 U.S.C. Sec. 5861(d) (1982).[10] On their convictions under Count 5, appellants each received sentences of ten additional years for carrying explosives in the course of possessing firearms, a violation[11] of Sec. 844(h)(2).[12] Appellants thus argue that, pursuant to their convictions under an indictment that was "designed to maximize the number of offenses which could be charged from [a] single event," Brief for Appellants at 52, they have been impermissibly sentenced to consecutive terms for the same act: illegally possessing explosives. With his customary thoughtfulness, Judge Lacey recognized that the imposition of consecutive sentences as to Counts 2 and 5 was not without difficulty.[13] I find the resolution of this issue more difficult than has the majority.
 
 
 52
 Analysis of this argument is guided by the well-established rule of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). See, e.g., Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985) (The Supreme "Court has consistently relied on the [Blockburger ] test of statutory construction"). As the Second Circuit recently noted,
 
 
 53
 [t]he Blockburger rule is a principle of statutory construction used to determine whether Congress has provided that two statutory offenses may be punished separately. Whalen v. United States, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980), cited in Albernaz v. United States, 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981).[14] The rule provides that
 
 
 54
 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'
 
 
 55
 Blockburger, 284 U.S. at 304, 52 S.Ct. at 182 [emphasis added].
 
 
 56
 United States v. Langella, 776 F.2d 1078, 1081-82 (2d Cir.1985). "If so, it is appropriate to conclude that the possibility of cumulative punishment was intended. If not and if no other evidence of an intention to create separate offenses is found, it will be presumed that cumulative punishment was not intended." Lovgren v. Byrne, 787 F.2d 857, 863 (3d Cir.1986).
 
 
 57
 Under Blockburger, appellants have clearly received separate sentences for the same criminal offense, for, in establishing a violation of Sec. 844(h)(2), the government has also, by definition, proven every fact necessary to show a violation of 26 U.S.C. Sec. 5861(d).[15] The facts of this case--appellants' convictions under both statutes for one act of possessing a cache of explosives in their warehouse bay--demonstrate a textbook example of a Blockburger violation, cf. Brown v. Ohio, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) ("the prosecutor who has established auto theft necessarily has established joyriding as well"); at the very least, it is not, to quote (now Chief) Justice Rehnquist's articulation, for a unanimous Court, of the showing required to pass the Blockburger test, "beyond peradventure" that conviction under each of these statutes requires proof of a fact that conviction under the other does not. Albernaz, 450 U.S. at 339, 101 S.Ct. at 1142.
 
 
 58
 In addition, there is no "clearly expressed legislative intent" favoring cumulative sentences for this single criminal act.[16] Section 844(h)(2) is designed to add a punishment for possessing explosives to the punishment prescribed for the federal crime that those explosives were used to further. But there is no indication that Congress, by passing Sec. 844(h)(2), meant to impose an additional punishment on those who had already violated federal explosives laws. "Nothing ... in the legislative history [that] has been brought to our attention discloses an intent contrary to the presumption [that] should be accorded to these statutes after application of the Blockburger test. In fact, the legislative history is silent...." Albernaz, 450 U.S. at 340, 101 S.Ct. at 1143. Since "[t]he assumption underlying the Blockburger rule is that Congress ordinarily does not intend to punish the same offense under two different statutes," Ball, 105 S.Ct. at 1672, I am convinced by this absence of legislative intent to the contrary that the double sentences of each appellant may not stand.[17]
 
 
 
 [1]
 On Count 1, which charged both defendants with conspiracy to possess unregistered firearms and false documents in violation of 18 U.S.C. Sec. 371 (1982), the court imposed a five year sentence. On Count 2, which charged defendants with possession of unregistered firearms (the explosives) in violation of 26 U.S.C. Sec. 5861(d), defendants received ten years. On Count 3, which charged defendants with the possession of unregistered firearms (the sawed-off shotgun), defendants received ten years. For Count 4, which charged defendants with the possession of unregistered firearms (the Uzi semi-automatic rifle), defendants received ten years. For Count 5, which charged defendants with the carrying of explosives during the commission of a felony in violation of 18 U.S.C. Sec. 844(h)(2), defendants received ten years. On Count 6, which charged defendants with the possession with intent to use false identification documents in violation of 18 U.S.C. Sec. 1028 (Supp. II 1984), they received three years. On Count 7, which charged Rosenberg with falsely representing a social security account number with the intent to deceive in violation of 42 U.S.C. Sec. 408(g)(2) (1982), she received five years. On Count 8, which charged Blunk with falsely representing a social security account number with the intent to deceive, he received 5 years. For Count 9, which charged both defendants with the possession of counterfit social security cards in violation of 42 U.S.C. Sec. 408(g)(3) (1982), defendants received five years
 The court imposed the sentences to run consecutively for a total prison term of fifty-eight years for each defendant. Although many of the offenses also provided for monetary penalties, the court declined to include fines in the defendants' sentences.
 
 
 [2]
 This section provides:
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for the failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
 
 
 [3]
 A disqualification motion filed after trial and judgment is usually considered untimely unless good cause can be shown for the delay, for otherwise a party alleging bias would always await judgment in the hopes of a favorable decision. See Crowder v. Conlan, 740 F.2d 447, 453-54 (6th Cir.1984); Waggoner v. Dallaire, 649 F.2d 1362, 1370 (9th Cir.1981). Even assuming appellant's brief to this court could constitute a motion for the purposes of 28 U.S.C. Sec. 144, it must be denied as untimely, and as lacking the substantive requirements of legal sufficiency. See Thompson, 483 F.2d at 528
 
 
 [4]
 We are unpersuaded by appellants' suggestion that the court's comment concerning the connection between Rosenberg and her attorney, Susan Tipograph, in the court's post-sentence letter to the Bureau of Prisons demonstrates the alleged antagonism. In the letter, the court stressed the importance of ensuring a secure confinement for the defendants:
 As to the place of incarceration, it will be remembered that Rosenberg's "comrade", Marilyn Buck, was permitted to walk out of Alderson on a legal furlough to visit her attorney, Tipograph. Tipograph and Rosenberg are more than just attorney and client. They have been associates, companions, and roommates. I am sure the Bureau of Prisons will make certain that Rosenberg does not profit from the same mistake that was made as to Buck. Careful consideration must be given to the security of any prison to which Rosenberg is sent. She is under indictment in the Southern District of New York, charged with aiding in the prison escape of Joanne Chesimard. I cannot emphasize too much the fact that a minimum-security prison will not hold Rosenberg.
 In context, the remark shows only the court's concern that the Bureau of Prisons be aware of the possibility that Rosenberg might attempt to escape.
 
 
 [5]
 This section provides:
 Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.
 
 
 [6]
 The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
 
 
 [7]
 Solem was the first, and so far the only, Supreme Court case to hold a noncapital punishment violative of the eighth amendment. Three years prior to Solem, the Court held that a life sentence imposed on a defendant under Texas's recidivist statute for a conviction of obtaining $120.75 by false pretenses did not offend the eighth amendment's cruel and unusual punishment clause. Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). In distinguishing Rummel, the Solem Court observed that Helm had received a life sentence without the possibility of parole, whereas Rummel would have been eligible for parole within twelve years of his initial confinement. Solem, 463 U.S. at 297, 103 S.Ct. at 3013
 
 
 [8]
 In this regard, we note that the Supreme Court upheld a sentence of forty years in prison for the possession with the intent to distribute less than nine ounces of marijuana. See Hutto v. Davis, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982)
 
 
 [9]
 Firearms are defined in 26 U.S.C. Sec. 5845(a)(8) as including "a destructive device." Section 5845(f)(1)(A) further defines destructive devices as "any explosive ... bomb."
 
 
 [10]
 Appellants argue that because the underlying felony for the purposes of Sec. 844(h)(2) could have been the possession of explosives--which are also "firearms" for the purposes of the explosives chapter of title 26, see supra note 8--the sentence could have been improperly cumulative. Because the indictment clearly identified the underlying felonies as the possession of the sawed-off shotgun and the Uzi semi-automatic rifle, however, we need not entertain this argument
 
 
 [11]
 Until 1984, 18 U.S.C. Sec. 924(c) provided, in part:
 Whoever--
 (1) uses a firearm to commit any felony for which he may prosecuted in a court of the United States, or
 (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States,
 shall be sentenced to a term of imprisonment for not less than one year nor more than ten years.
 Section 924(c) now reads, in part:
 Whoever, during and in relation to any crime of violence, including a crime of violence which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence, be sentenced to imprisonment for ten years.
 18 U.S.C. Sec. 924(c) (Supp. II 1984).
 
 
 [12]
 This statute provides:
 Use of information for sentencing
 No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.
 
 
 [13]
 Effective November 1, 1987, district courts are required to state their reasons for the imposition of particular sentences by statute. See 18 U.S.C. Sec. 3553(c) (Supp. III 1985)
 
 
 [1]
 Appellants proposed the following jury charge: in order to find appellants guilty on Count 5, the jury must "first determine that they are guilty of one or more" of the other federal felonies charged and, "further," "that there is some connection between the carrying of explosives" and those other felonies. Jt.App. at A63. "That is, you must determine that the carrying of explosives played some role in the alleged possession of unregistered firearms ... If you do not find that the carrying of explosives played such a role, you may not find the defendants guilty ..." Id. The district court denied this request
 
 
 [2]
 By offering dictionary definitions of the word "during," see maj. at 1178, the majority by implication offers an alternative construction of the statute--one that reads the phrase "during the commission of" to mean only "during." The only way to give some independent meaning to the words "the commission of"--i.e., to all the words employed by Congress--is to construe Sec. 844(h)(2) as containing the relational element the majority has read out of the statute. I choose such a construction because, " '[i]n construing a statute[,] we are obliged to give effect, if possible, to every word Congress used.' " United States v. DiSantillo, 615 F.2d 128, 135 (3d Cir.1980) (Aldisert, J., joined by Hunter and Van Dusen, JJ.) (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979)). Accord Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana, 472 U.S. 237, 105 S.Ct. 2587, 2595, 86 L.Ed.2d 168 (1985); Colautti v. Franklin, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); Bell v. United States, 754 F.2d 490, 498-99 (3d Cir.1985)
 
 
 [3]
 See H.Rep. No. 1549, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin.News 4007, 4046 ("Section 844(h) carries over to the explosives area the stringent provisions of the Gun Control Act of 1968 relating to the use of firearms and the unlawful carrying of firearms to commit, or during the commission of a Federal felony.")
 
 
 [4]
 Section Sec. 924(c)(2) originally provided that whoever "carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years." 18 U.S.C. Sec. 924(c)(2) (1982). Section 844(h)(2) provides that whoever "carries an explosive unlawfully during the commission of any felony which may be prosecuted in a court of the United States, shall be sentenced to a term of imprisonment for not less than one year nor more than ten years." 18 U.S.C. Sec. 844(h)(2) (1982)
 
 
 [5]
 See supra note 4
 
 
 [6]
 For the original and amended text of Sec. 924(c), see supra maj. at 1178 n. 11
 
 
 [7]
 The majority offers this fallback justification for its interpretation: "even if the Stewart court was correct in its analysis of why Congress [added the phrase "in relation to" to] Sec. 924(c), Congress has not seen fit to modify Sec. 844(h) in the same manner." Maj. at 1178. To my mind, it is inappropriate to delete an element of a statutory crime simply because "Congress has not seen fit" to restate emphatically that statute's meaning
 
 
 [8]
 In Robertson, there was "no evidence" that the defendant displayed a gun while committing his federal extortion crimes, or, indeed, that the defendant had ever carried the gun in question. 706 F.2d at 256. The Eighth Circuit accordingly vacated Mr. Robertson's Sec. 924(c)(2) conviction. See id
 
 
 [9]
 For a further, contemporary discussion of the rationales underlying this principle of construction, see United States v. Bass, 404 U.S. 336, 347-49, 92 S.Ct. 515, 522-23, 30 L.Ed.2d 488 (1971) (identifying the policies of fair warning and separated powers)
 
 
 [10]
 Section 5861(d) makes it "unlawful for any person--
 to receive or possess a firearm which is not registered to him [or her] in the National Firearms Registration and Transfer Record[.]"
 26 U.S.C. Sec. 5861(d) (1982). A "firearm," for purposes of both this provision and "the extensive dealer registration and gun control provisions of the same title (for which it was obviously primarily designed)," Parker v. United States, 801 F.2d 1382, 1383 (D.C.Cir.1986) (Scalia, J.), includes any "destructive device." 26 U.S.C. Sec. 5845(a) (1982). A subsection of this provision defines the term "destructive device" as including "any explosive [or] incendiary ... (A) bomb, (B) grenade, ... or (F) similar device," as well as "any combination of parts either designed or intended for use in converting any device into a destructive device ... and from which a destructive device may be readily assembled." 26 U.S.C. Sec. 5845(f) (1982).
 
 
 [11]
 I, of course, dispute the statutory validity of appellants' convictions on Count 5. See supra p. 1-9
 
 
 [12]
 For the language of Sec. 844(h)(2), see supra note 4
 
 
 [13]
 At sentencing, Judge Lacey made these remarks:
 "I indicated in connection with Count 5 that I would have more to say about it. It's arguable that a separate sentence should not be imposed on each of Counts 2 and 5. This is based on the argument that establishing every element of an offense under 18 U.S.C. Section 844(h)(2), carrying explosives while committing a felony, which is the subject of Count 5, will also establish a violation of 18 [sic] U.S.C. Section 5861(d), the subject of Count 2. If on appeal the Court of Appeals decides that this argument is valid, I state now that my sentence covering those two counts, 2 and 5, would be a term of imprisonment for 10 years, consecutive to the sentences imposed on all other counts."
 Transcript of Proceedings (Sentence) (May 20, 1985) at 52.
 
 
 [14]
 In Albernaz, the Supreme Court employed the Blockburger test to evaluate the propriety of consecutive sentences for the crimes of conspiracy to import marijuana and conspiracy to distribute marijuana. Because the two statutes at issue "specif[ied] different ends as the proscribed object of the conspiracy--distribution as opposed to importation-- ... it [wa]s beyond peradventure that 'each provision require[d] proof of a fact [that] the other [di]d not.' " 450 U.S. at 339, 101 S.Ct. at 1142 (quoting Blockburger ). The unanimous Court thus made "the unequivocal determination" that the statutes prescribed separate offenses, "violations of which c[ould] result in the imposition of consecutive sentences." Id
 
 
 [15]
 A violation of Sec. 844(h)(2) is proven by showing the following facts: (1) carrying (2) an explosive (3) unlawfully (4) during the commission of a felony. A violation of Sec. 5861(d) is proven by showing these facts: (1) receiving or possessing (2) an explosive (3) that is not registered. As these appeals demonstrate, the former list of facts includes each element of the latter
 
 
 [16]
 The Supreme Court has consistently decreed that, under Blockburger, cumulative sentences for the same criminal offense are invalid unless Congress has "specially authorized" such sentences. Whalen, 445 U.S. at 693, 100 S.Ct. at 1438. See, e.g., Ohio v. Johnson, 467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984) ("the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent"); Missouri v. Hunter, 459 U.S. 359, 367, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983) ("the result in Whalen [invalidating cumulative sentences for the crimes of rape and killing the same victim in the perpetration of the rape] turned on the fact that the Court saw no 'clear indication of contrary legislative intent' ") (quoting Whalen, 445 U.S. at 692, 100 S.Ct. at 1438). Perhaps the majority's conclusion is explained by the fact that it applies this rule backwards. See maj. at 1177 ("Congress ... [did not] express[ ] an intention in the legislative history that Sec. 844(h)(2)'s scope would not extend to such felonies.") (emphasis added)
 
 
 [17]
 If this court were vacating appellants' convictions on Count 5, this cumulative sentencing problem would, at least temporarily, leave the case. Were the government then to decide to reprosecute on that count and, after proving a relationship between the possession of explosives and an underlying federal felony, obtain a proper conviction under Sec. 844(h)(2), however, the sentencing judge would again confront the problem now before us. To prevent the relitigation of this question at some later date, I would hold now as a matter of law that an accused already sentenced under Sec. 5861(d) may not also be sentenced under Sec. 844(h)(2)--and vice versa--for the same incident of illegally possessing the same explosives
 Because this court has affirmed appellants' convictions on both Counts 2 and 5, however, the Blockburger violation I find is actual, not hypothetical. In this Circuit, the remedy for such an injury is to vacate the cumulative sentences and to remand the case to the district court with instructions to impose a general sentence that does not exceed the maximum possible under the statute prescribing the greater punishment. See Gov't of the Virgin Islands v. Brathwaite, 782 F.2d 399, 408 & n. 9 (3d Cir.1986) (Hunter, J., for the court).