Lehigh Valley Trust Company, Appellant, *v.* Pennsylvania Turnpike Commission.

136

Argued April 21, 1960.   Before Jones, C. J., Bell, Musmanno, Jones, Cohen and Eagen, JJ.

reargument refused August 16, 1960.

*Philip Price,* with him *William B. Butz, Robert K. Young,* and *Barnes, Dechert, Price, Myers & Rhoads,* for plaintiff.

*Irving Wilson Coleman,* for Pennsylvania Turnpike Commission, defendant.

OPINION BY MR. JUSTICE COHEN, June 29, 1960:

These are cross appeals from a judgment entered on a jury verdict in an eminent domain proceeding brought by the Pennsylvania Turnpike Commission. The condemnee seeks a new trial while the Commission alleges error in the lower court's increasing the award of detention damages.

On January 18, 1954, the Pennsylvania Turnpike Commission condemned certain lands owned by the condemnee in preparation for the construction of the Northeast Turnpike extension. Prior to the taking, the condemnee owned approximately 185 acres of land which was divided into two tracts by Route 22, a four-lane limited access highway running east and west below the grade level of, and allowing no access from, the condemnee's lands. Eighty-one acres of the condemnee's land lay north of Route 22, while 104 acres lay south of it. The course of the Turnpike (now constructed) runs north and south through the easterly portion of the condemned land and across Route 22 at right angles on an overhead bridge. Approximately 21 acres north of Route 22 and 44 acres south of it were taken in fee.

The separate condemnation necessary for the construction of Route 22 had taken place some two and a half years before the instant condemnation. At that time the condemnee's single unit of land (then 194 acres) had been used in its entirety for farming, and the condemnee continued to so use the separate tracts after the construction of the dissecting highway, Route 22.

The condemnee's principal objection herein is directed at the lower court's refusal to permit the con-

demnee to introduce testimony as to the values of the separate tracts of land (both before and after the Turnpike condemnation) after the condemnee had first introduced testimony as to the depreciation in value of the tract as a whole. Condemnee argues that because the separating limited-access highway (Route 22) made the two tracts of land virtually inaccessible to each other and the use of each tract separate, the injury to one in no way affected the other. Hence, condemnee maintains, the court was in error in requiring them to be valued in the condemnation as a single tract merely because they were condemned for the same highway.

If these were the only facts to be considered, we might be inclined to agree. But in this case the condemnee initially chose to try his case on the theory that only one integrated tract was affected by the condemnation. Each of condemnee's expert witnesses was questioned as to his opinion of the damages occasioned by the whole tract upon the taking. Lester A. Grammes, the condemnee's first expert witness, testified that the acreage affected before the taking was 185 acres, that in his opinion the highest and best use of this entire tract of land, both north and south of Route 22, was for residential and/or commercial purposes, and then gave his opinion as to the fair market value of the tract as a whole before the taking and then after the taking. The testimony of Allen Folk, condemnee's other expert witness, was presented in the same manner. It was only after this testimony by each expert was received in evidence without objection that the court refused to permit each of condemnee's experts to present further testimony as to the fair market value of the northern portion of the tract before and after the taking, and the fair market value of the southern portion of the tract before and after the taking. We think the court below was correct in so doing. The con-

demnee, having first chosen to proceed on a theory that the tract as a whole was damaged, waived whatever rights he had to try the case as one involving damages to separate and distinct portions of the entire tract. Jury trials in condemnation cases are complicated enough by the disparity and variety in expert valuations without having the condemnee further compound the confusion by offering additional expert testimony on a theory of a single unit being affected, see *Morris v. Commonwealth*, 367 Pa. 410, 80 A. 2d 762 (1951), or separate units being affected, see *Kossler v. Pittsburg, Cincinnati, Chicago & St. Louis Railway Co.*, 208 Pa. 50, 57 Atl. 66 (1904). Since the condemnee originally chose to claim damages to the whole, to have permitted the introduction of testimony as to damages to the separate tracts would in effect have allowed evidence of specific items of damages affecting the whole, and have invited itemization of the damages by the jury. We have repeatedly denied evidence of this nature in condemnation proceedings, see *Commonwealth v. Brown*, 399 Pa. 156, 159 A. 2d 881 (1960).

Condemnee further contends that the court below erred in not permitting the chief inheritance tax appraiser for the area, Raymond H. Roedell, to testify because of his alleged unfamiliarity with the property prior to the taking. We said in *Stevenson v. East Deer Township*, 379 Pa. 103, 106, 108 A. 2d 815 (1954), that the question of whether a witness has shown himself sufficiently qualified to testify is a matter for the discretion of the trial judge, and the latter's ruling in that regard will not be reversed by an appellate court except in the case of clear error. Unfortunately, for the condemnee, Roedell testified, and the court below gave as its reasons for refusing to allow Roedell to state his opinions, that although he had been on the property in question several times, he was not familiar with the

property before the construction of Route 22. His only acquaintance with the property just before the taking was the result of his "driving by" on Route 22. While it is true that in all questions of competency "there is no fixed or absolute standard; the witness is required to have only such knowledge of the value of the property as could be reasonably expected in a particular case; the standard must not be so high as to exclude the best evidence available under the circumstances," *Stevenson v. East Deer Township,* supra, we cannot say that on these facts, after having already heard the testimony of two other experts for condemnee, the trial judge abused his discretion.

Condemnee's last contention concerns the court's action in striking from the evidence the response by condemnee's witness to a question asked by the Commission in cross-examination. Upon consideration of the record, we agree with the court below that the witness' reference to an agreement of sale in his answer was not responsive to any question, but was merely volunteered. The cross-examiner, particularly one who is questioning an expert witness, has the right to determine what information will be elicited from the witness. The court properly granted the Commission's objection.

We turn now to the Commission's contention that the lower court erred in increasing the rate from 4% for detention damages as returned by the jury to the legal rate of 6%. In *Waugh v. Commonwealth,* 394 Pa. 166, 173, 146 A. 2d 297 (1958), we reaffirmed the rule that "in the absence of any evidence of the normal commercial rate of interest during the period of detention, a presumption arises that such rate is the legal interest rate of 6%." The jury applied a rate of 4% not because there was any evidence that this was the normal commercial rate, but because there was a stipu-

lation by the parties that the prime commercial rate was 4%. As the lower court pointed out, there is a distinction between these two rates—"Prime commercial rate is the rate of interest charged to an individual or corporation whose credit is of the highest or whose collateral is of the highest quality. The normal commercial rate is the rate of interest charged by lenders to the average, normal borrower whose credit is not 'prime' or unquestionable." There being no evidence as to what was the normal commercial rate, the court properly adjusted the award of detention damages by applying the legal rate of 6%.

Judgment affirmed. Costs in each case to be borne by the respective appellants.