Palmer K. SCHREIBER

v.

Christopher G. KELLOGG.

Civ. A. No. 90–5806.

United States District Court,
E.D. Pennsylvania.

Nov. 19, 1993.

Stanley R. Wolfe, Stuart J. Guber, Berger & Montague, P.C., Philadelphia, PA, for plaintiff.

Palmer K. Schreiber, pro se.

Arnold S. Klein, Kelley, Drye & Warren, New York City, Thomas More Marrone, Brett A. Datto, Nicholas A. Clemente, P.C., Gavin P. Lentz, Bochetto & Lentz, P.C., Philadelphia, PA, for defendant.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff, Palmer Schreiber ("Schreiber"), instituted this diversity action to collect fees for his legal representation of defendant, Christopher Kellogg ("Kellogg"), in matters concerning the John Wanamaker stores and a trust under the will of Rodman Wanamaker.

This case was tried without a jury between July 19 and July 23, 1993. On August 3, 1993, the court announced its findings of fact and conclusions of law from the bench and entered a judgment in favor of the plaintiff and against the defendant in the total amount of $512,863.76, including certain costs and prejudgment interest. Before the court is the defendant's consolidated motion for amendment of the findings of fact and conclusions of law pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, and for amendment of this court's judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

All the legal and factual issues involved here are set forth in detail in this court's August 3, 1993 findings of fact and conclusions of law. Suffice it to say that in the late 1970's, when the relevant events in this case began, defendant Kellogg was a contingent income beneficiary of the sizeable Rodman Wanamaker Trust (the "trust"), the principal asset of which was the stock of the John Wanamaker department stores. Under the terms of the trust, Kellogg, a Wanamaker descendant, would become an income beneficiary only if he survived his mother. At that time and up until his mother's death in 1989, Kellogg was without significant financial resources.

In March of 1978, an offer was made to purchase the John Wanamaker stores. Kellogg engaged Schreiber as his lawyer to oppose the offer as too low. A better price was later obtained and the stores were sold. In addition to performing legal work in connection with this sale, Schreiber represented Kellogg in a surcharge action against the trustees of the Rodman Wanamaker trust in the Orphans' Court Division of the Court of Common Pleas of Montgomery County. Schreiber also filed and litigated in the Common Pleas Court, with the full knowledge and consent of Kellogg, a fee petition for services rendered in connection with the sale of the John Wanamaker stores.

On or about May 13, 1981, Kellogg signed a fee agreement ("the agreement") which became the subject of this suit. The agreement, which the court found to be a valid written contract, stated in relevant part:

You [Kellogg] shall pay me [Schreiber] $80,000.00 which shall be deemed earned and due as of July 1, 1979 with interest from that date at that rate which is commercially competitive considering risk and terms of payment ("Counsel Fee")....

In addition to the Counsel Fee, you shall pay me all costs incurred by me in representing you in connection with both the sale of JWP [John Wanamaker, Philadelphia Stores] and the Surcharge Action, but not those incurred by me in connection with my Fee Petition.

The letter also contained three payment options:

Any time within six months from the date hereof I [Schreiber] will accept in lieu of the Counsel Fee obligation your [Kellogg's] promissory note to my order in the amount of $80,000 with interest at a commercially competitive rate of interest considering risk and terms of payment with principal and interest due and payable commencing on the death of your mother ... The note shall be secured by a life insurance policy on your [Kellogg's] life naming me [Schreiber] and my assigns as beneficiary thereof in an amount at all times equal to the then outstanding balance under the Note until paid in full ...

In the event you [Kellogg] are unable to obtain the court approved Charging Lien described ... above, you and I [Schreiber] will use our best effort to attempt to reach an agreement ... for deferred payment of the Counsel Fee ... which does not cripple you financially and yet still gives me the assurance of payment which you agree that I deserve....

If we fail to agree on a deferred payment arrangement the Counsel Fees shall remain as stated.

A promissory note was never issued and the parties did not work out a "deferred payment arrangement."

Over four years passed and Kellogg had still not paid the fee. In October, 1985, while on a hunting trip together in Greene, New York, Schreiber voiced his concern to Kellogg that the limitations period was running on the agreement. Pausing in an apple orchard while bird hunting, Schreiber and Kellogg orally modified the written fee contract. In return for Schreiber's promise not to sue, Kellogg promised to pay the amount due upon his mother's death when he would become a present income beneficiary of the Rodman Wanamaker trust. Kellogg's mother lived almost four more years until August, 1989. Even after her death, however, Kellogg refused to pay what he owed Schreiber. In September, 1990 Schreiber sued Kellogg.

Kellogg's consolidated post-trial motion raises numerous issues which have been fully litigated and addressed in this court's findings of fact and conclusions of law.[1] The court sees no reason to revisit all of the issues raised and will limit itself to several which warrant additional amplification.

In Kellogg's consolidated motion, he asserted that the applicable statute of limitations for any claim arising from the May 13, 1981 agreement is four years under 42 Pa. Cons.Stat.Ann. § 5525. He further stated that the statute had run prior to the oral modification of the contract in 1985. According to Kellogg, the modification lacked consideration and was therefore invalid. However, in his brief in reply to Schreiber's opposition to that motion, Kellogg conceded that the applicable statute of limitations for a written contract under 42 Pa.Cons.Stat.Ann. § 5527 was six years at the time that this claim arose, and that subsequent amendments to that statute were not made retroactive.[2] Kellogg asserts, however, that the

---

1. In his consolidated motion, defendant again raises such issues as whether there was a conflict of interest between Schreiber's prosecution of the surcharge action and his attempt to obtain court approval of his own fee petition; whether the court allowed evidence in violation of the parol evidence rule; and whether there was valid consideration for the oral modification of the contract in 1985. Furthermore, defendant asserts that this court's findings of fact and conclu-

sions of law are unsupported by the evidence. None of defendant's contentions has any merit.

2. The statute was amended in December, 1982 so that written contracts are no longer covered by § 5527. Instead, 42 Pa.Cons.Stat.Ann. § 5525(8) provides for a four year limitation for "[a]n action founded upon a contract, obligation or liability founded upon a writing ..."

agreement was not a valid written contract and was therefore not covered by § 5527. This court finds no reason to reconsider its finding that the May 13, 1981 agreement constitutes a valid written contract. The oral modification occurred in 1985, well within six years of May, 1981, when the original agreement was signed. Kellogg's contention with respect to the statute of limitations is totally without merit.

■ Kellogg further asserts that the statute of limitations had run on the oral modification prior to the time this suit was filed. This contention is similarly baseless. As this court explained in its findings of fact and conclusions of law, Kellogg was not obligated to pay any money, under the modified contract, so long as his mother was living. Kellogg's mother, as previously noted, died in August of 1989. Obviously, Schreiber's cause of action could not have arisen, and he could not have sued before that time. Schreiber instituted this action in September of 1990, well within the statutory period.

■ Kellogg next contends that the court erred by awarding Schreiber 13½% compound prejudgment interest. The May 13, 1981 agreement required Kellogg to pay interest on the $80,000 obligation at a rate which is "commercially competitive considering risk and terms of payment." Kellogg asserts that the language of the agreement is not sufficiently specific to remove it from the applicability of 41 Pa.Stat.Ann. § 202.[3] That statute provides in pertinent part:

> Reference in any law or document enacted or executed heretofore or hereafter to "legal Rate of Interest" and reference in any document to an obligation to pay a sum of money "with interest" without specification of the applicable rate shall be construed to refer to the rate of interest of six percent (6%) per annum.

The statute is construed to mean six percent (6%) simple interest. *See e.g. Fernandez v. Levin,* 519 Pa. 375, 548 A.2d 1191 (1988).

However, the historical and statutory notes to the amended version of § 5525 expressly state that that section "shall apply only to causes of action which accrue after the effective date of this act."

Kellogg is correct that the statute requires interest at the legal rate where a contract is silent as to interest or provides for interest without specification of the applicable rate. See *Spang & Co. v. USX Corp.,* 410 Pa.Super. 254, 599 A.2d 978 (1991). In this case, however, the contract was not silent. It provided for interest at a rate which is "commercially competitive considering risk and terms of payment." Kellogg has cited no case, and we have found none, which requires that parties delineate a specific numerical rate in order to make the statute inapplicable.

Precedent interpreting Pennsylvania law on this subject is sparse. As the Court of Appeals for this circuit has acknowledged, "the law of Pennsylvania with respect to the rate of prejudgment interest is far from perspicuous." *Peterson v. Crown Financial Corp.,* 661 F.2d 287, 293 (3d Cir.1981). The trend, however, has been to restrict the applicability of the statute. As the Supreme Court of Pennsylvania explained:

> The decided trend of courts of law and courts of equity has been "to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case" ... Unless a case be found, which is a conclusive precedent, the safest and at the same time the fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing.

*Murray Hill Estates, Inc. v. Bastin,* 442 Pa. 405, 276 A.2d 542, 545 (1971), quoting *McDermott v. McDermott,* 130 Pa.Super. 127, 130, 196 A. 889 (1938).

■ The statute does not override normal contract principles. "A contractual promise to pay interest is enforceable as any other contractual promise, provided that the rate does not exceed that allowable by law." *Long v. Long,* 34 Pa.D. & C.3d 135, 144 (1983). Similarly, Restatement (Second) of

3. In a diversity action the award of prejudgment interest is governed by state law. *Jarvis v. Johnson,* 668 F.2d 740 (3d Cir.1982).

Contracts § 354 comment a (1981) states, "[i]f the parties have agreed on the payment of interest, it is payable not as damages but pursuant to a contract duty that is enforceable as is any other such duty, subject to legal restrictions on the rate of interest." It is a general rule that the court's foremost objective in interpreting a contract is to ascertain the intent of the parties. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). Where a term in a contract is ambiguous, "[p]arol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Id.* 519 A.2d at 390, quoting *In re Estate of Herr*, 400 Pa. 90, 161 A.2d 32 (1960).

The meaning of the term "commercially competitive" is not so ambiguous as to be incapable of interpretation. In eminent domain proceedings, for example, the court applies the legal rate of interest unless the parties present evidence of the "normal commercial rate of interest." *Lehigh Valley Trust Co., v. Pennsylvania Turnpike Commission*, 401 Pa. 135, 163 A.2d 86, 88 (1960); *Waugh v. Commonwealth*, 394 Pa. 166, 146 A.2d 297, 301 (1958). There, the court explained that the normal commercial rate is "the rate of interest charged by lenders to the average, normal borrower whose credit is not 'prime' or unquestionable." *Id.* Thus, the concept of a commercial rate of interest is one which is utilized in other contexts. The court, with appropriate evidence, can ascertain such a rate.

Although the precise determination of what constitutes a commercially competitive rate may be subject to dispute, it is at least clear that the parties did not intend interest to be calculated at the statutory rate of 6%. Schreiber testified, for example, that between January and early May of 1981 he and Kellogg had discussed what an appropriate rate of interest would be. (*See e.g.* N.T. 7/19/93 pp. 37–41, 47). According to Schreiber, they agreed that the rate should be commercially competitive and that a commercial rate would be something above prime, which was at that time approximately 19.5%. They could not agree, however, on what the incre-

ment would be. *Id.* at 37–40. Schreiber stated that Kellogg expected the average prime rate to be somewhere around 10% while Schreiber expected it to be closer to 20%. Schreiber submitted documents, which he stated that he prepared sometime between January and the beginning of May of 1981, in which he estimated how interest would accrue over the years at various rates. (*Id.* at 40–41, Plaintiff's exhibits 71 and 135.) In these documents, he calculated the interest on the $80,000 principal amount at 10%, 15% and 20% over a 15 year period. Schreiber testified that although they discussed monthly compounding, he compounded the interest yearly because he did not have the ability to calculate it monthly. *Id.* He also testified that these documents were given to Kellogg for his review prior to May 13, 1981. Although Kellogg proposed that the parties agree to a principal amount larger than $80,000 instead of interest, they ultimately rejected that idea. *Id.* at 47. Thus, according to Schreiber's testimony, which this court found credible, the parties intended and expected that the applicable rate would be an amount greater than the average prime rate.

 After considering the testimony of Schreiber and his expert witness, the relationship between the parties and all the surrounding circumstances, this court awarded twelve years of prejudgment interest in the amount of $423,402.79 on top of the $80,000 fee. That translates into an implicit monthly rate of 13.21% and is approximately 2.3% above the average prime rate for the applicable period. This rate was based on the average rates charged on small commercial loans, as calculated by plaintiff's expert witness. In so doing, this court found that that rate best comported with the expectations of the parties. We recognize that where a term is ambiguous it is to be construed against the drafter. However, in this case, Kellogg did not object to the testimony of plaintiff's expert, and did not introduce any evidence of his own to suggest that the parties intended to employ a different rate of interest. Now, for the first time, Kellogg asserts that the applicable rate is the statutory rate. As explained above, the statutory rate clearly does not comport with the intention of the

parties. Consequently, this court sees no reason to disturb its award of interest as stated in its findings of fact and conclusions of law.

■ Finally, Kellogg contends that the undersigned erred by failing sua sponte to recuse himself after participating in a telephone conference in this case on July 13, 1993. In that conference Kellogg's then counsel, Arnold Klein, raised with the court his motion to withdraw as Kellogg's counsel because of Kellogg's failure to pay him counsel fees for his services in this case. Kellogg's local counsel, Nicholas Clemente, who subsequently took over the case, also participated in the call, as did Kellogg himself.[4] Schreiber and his counsel did not participate, and no contemporaneous transcript of the phone conference was made.

According to Kellogg's motion, Mr. Klein stated during the telephone conference that "... after three years of working with Kellogg, I do not trust him and I do not believe him." Although this court has no recollection of these specific words, neither the motion to withdraw because of Kellogg's failure to pay his counsel fees, nor the discussion during the telephone conference concerning the motion, nor the granting of the motion had any influence whatsoever on the ultimate decision in this case. This court based its decision solely on the evidence presented at the trial and the applicable law.

The recusal or disqualification of a federal district judge is governed by 28 U.S.C. §§ 144, 455. Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or

good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

■ A judge is not automatically required to recuse himself or herself upon the filing of a motion under § 144. He or she must first pass on the legal and factual sufficiency of the motion and ascertain whether the facts alleged fairly support a charge of bias. *See Mims v. Shapp,* 541 F.2d 415 (3d Cir.1976). We note that this section requires the movant to file a timely motion accompanied by an affidavit. No such affidavit has been filed in this case.

■ Section 455 describes additional circumstances under which a judge must disqualify himself or herself. It provides in relevant part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

While Kellogg has not specified under which section he seeks recusal or disqualification, the request is improper under either. It is well established that generally only extrajudicial bias can serve as a basis for recusal under both §§ 144 and 455. *See e.g. Johnson v. Trueblood,* 629 F.2d 287 (3d Cir.1980), *cert. denied,* 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981); *Resident Advisory Bd. v. Rizzo,* 510 F.Supp. 793, 797 (E.D.Pa.1981). Extrajudicial bias is "bias not derived from the evidence or conduct of the parties that the judge observes in the course of the proceedings." *Johnson* at 291. *See also, United States v. Grinnell Corp.,* 384 U.S. 563, 580–83, 86 S.Ct. 1698, 1708–10, 16 L.Ed.2d 778 (1966); *United States v. Rosenberg,* 806 F.2d 1169 (3d Cir.1986), *cert. denied Rosenberg v. United States,* 481 U.S. 1070, 107

---

**4.** Mr. Clemente served as defendant's attorney throughout the trial but has since been replaced.

S.Ct. 2465, 95 L.Ed.2d 873 (1987). As stated above, Kellogg's counsel made the disputed statements during a telephone conference held to discuss counsel's request for withdrawal. Unquestionably, such remarks occurred in the course of judicial proceedings and cannot form the basis for recusal here.

 There is a "rarely invoked" exception to the requirement that bias must stem from an extrajudicial source. This exception requires disqualification when a judge displays "pervasive bias" towards defendants regardless of the source of the bias. *Rosenberg*, 806 F.2d at 1174. In this case, the only evidence that Kellogg has produced to support its contention that this court has shown "pervasive bias" is this court's ultimate ruling in favor of Schreiber. Adverse decisions alone, however, cannot support a finding of bias. *Rosenberg* at 1174; *Smith v. Danyo*, 585 F.2d 83 (3d Cir.1978).

Furthermore, a request for recusal or disqualification under either section must be timely made. As the Court of Appeals of this Circuit has made clear, "The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings." *Danyo*, at 83. *See also United States v. Rosenberg*, 806 F.2d at 1173 n. 3. The telephone conference took place on July 13, 1993. Kellogg did not request recusal at that time. Moreover, on July 19, at the beginning of the trial before testimony was taken, this court asked the parties on the record, whether, as they had previously indicated orally, they wished to waive a jury trial. Both counsel answered in the affirmative. If Kellogg had concerns about the competence or willingness of this court fairly to decide this case, he could have avoided any perceived problem by having the case tried to a jury, as originally demanded. Kellogg's request for recusal or disqualification is untimely.

The courts have made clear that a judge has an affirmative duty not to recuse himself if the movant fails to establish a reasonable doubt concerning his impartiality. *Grand Entertainment Group Ltd. v. Arazy*, 676 F.Supp. 616, 619 (E.D.Pa.1987). The court was not biased, and the defendant has not presented any evidence of bias which would justify recusal or disqualification in this case.

Accordingly, defendant's consolidated post-trial motion will be denied.

### *ORDER*

AND NOW, this 19th day of November, 1993, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the consolidated post-trial motion of defendant, Christopher G. Kellogg, for amendment of this court's findings of fact and conclusions of law, for new trial, and for amendment of this court's judgment, is DENIED.