**UNITED STATES of America**

v.

·**Kevin J. RANKIN.**

**Crim. No. 88–150–01.**

United States District Court,
E.D. Pennsylvania.

March 26, 1998.

---

Bucky Mansuy, Ronald H. Levine, Alan Hoffman and Richard Scheff, Assistant U.S. Attorneys, for U.S.

Ben W. Joseph, Philadelphia, PA, for Kevin J. Rankin.

Kevin J. Rankin, Philadelphia, PA, pro se.

·MEMORANDUM

CAHN, Chief Judge.

Before the court are a petition and two motions by Defendant Kevin J. Rankin ("Rankin"), who is proceeding *pro se*. Rankin petitions the court for *coram nobis* relief. In addition, Rankin moves the court to reassign this case outside the Eastern District of Pennsylvania, and to disqualify the U.S. Attorney's Office for this district, particularly Assistant U.S. Attorney Louis R. Pichini ("Pichini"), from this case. For the reasons that follow, the court denies the petition and the motions.

## I. BACKGROUND

The long history of this case, and of a related criminal matter involving Rankin, No. 83–314 (the "83 case"), need not be recited in detail here. Other courts, including this one, have previously described the background of these cases, *see, e.g., United States v. Rankin*, 870 F.2d 109, 110–11 (3d Cir.1989); *United States v. Rankin*, No. Civ. A. 92–7199, 1994 WL 243862, at *1–2 (E.D.Pa. June 7, 1994), and the parties' familiarity with the facts recited in these opinions is presumed. A brief summary of events, however, is appropriate.

### A. The 83 Case

On August 10, 1984, after a jury trial in the 83 case before Judge Hannum, Rankin was found guilty of numerous narcotics felonies. Judge Hannum sentenced Rankin to fifty-four years in prison. The court of appeals, however, vacated the conviction on January 6, 1986, and ordered a new trial. Rankin then filed a motion, pursuant to 28 U.S.C. §§ 144 & 455(a), requesting Judge Hannum's recusal from the second trial. Rankin prevailed on the motion pursuant to § 144.[1] The second trial, which was reassigned to this court, commenced on October 20, 1986. The jury found Rankin guilty of violating 21 U.S.C. § 843(b) (unlawful use of a communications facility to facilitate the commission of a narcotics felony). The court sentenced Rankin to ten years in prison, and

subsequently reduced the sentence to time served, plus probation. The court of appeals affirmed the conviction and sentence.

### B. This Case

On April 13, 1988, Rankin was indicted in this case, No. 88–150, for allegedly making perjurious statements in the affidavit he filed in support of his § 144 motion in the 83 case. On April 25, 1988, Chief Judge Gibbons of the Third Circuit Court of Appeals assigned this case to Judge Wolin from the District of New Jersey, and directed Judge Wolin to hold court in this district pending the disposition of the case. A superseding indictment charging Rankin with additional crimes was filed on May 11, 1988. A trial commenced on July 31, 1989, and the jury found Rankin guilty of violating 18 U.S.C. §§ 1001 (making a false statement to a federal agency) & 1503 (endeavoring to obstruct justice). Judge Wolin fined Rankin and sentenced him to three years' probation, to run concurrently with Rankin's probationary period in the 83 case. The court of appeals affirmed the conviction and sentence.

Rankin then filed three motions: (1) a motion for relief pursuant to 28 U.S.C. § 2255; (2) a motion to disqualify the U.S. Attorney's office for this district from this case; and (3) a motion to transfer this case to the District of New Jersey. In a memorandum and order dated October 23, 1992, Judge Wolin denied all three motions. The court of appeals affirmed.

Rankin's probationary period ended on September 27, 1992.

On April 23, 1997, Rankin filed the instant petition for writ of *coram nobis*. On May 29, 1997, Rankin filed the instant motion to disqualify the U.S. Attorney's office for this district, particularly Pichini, from this case. On July 11, 1997, this case was reassigned to this court. On November 20, 1997, Rankin filed the instant motion to reassign this case outside this district.

---

**1.** Although Rankin's counsel filed an affidavit contradicting Rankin's claims regarding Judge Hannum, the court was required to accept Rankin's factual allegations as true. *See Rankin*, 870 F.2d at 110 & n. 1.

## II. DISCUSSION

### A. Motion for Reassignment Outside This District

Rankin moves for reassignment pursuant to 28 U.S.C. §§ 144 & 455(a). In support of the motion, Rankin makes two general claims, which the court summarizes as follows: (1) the biased attitude and conduct of Judge Hannum, which gave rise to his recusal in the 83 case, can be imputed to all judges in this district, (*see* Reassignment Mot. ¶ 2); and (2) this court, in the course of presiding over the second trial in the 83 case, once expressed to Rankin its disapproval of him, (*see id.* ¶ 6).[2] Rankin argues that "there exists [sic] circumstances in which the[ ] impartiality [of the judges in this district] might reasonably be questioned." · (*Id.* ¶ 17.) He also argues that "this Court has a personal bias and prejudice against him and in favor of the United States." (*Id.* ¶ 3.)

Although the analysis under §§ 144 and 455(a) differs, reassignment of this case is not warranted under either statute.

### 1. 28 U.S.C. § 455(a)

Section 455(a) provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A. § 455(a) (West 1993). The inquiry under this section is whether "a reasonable [person] knowing all the circumstances would harbor doubts concerning the judge's impartiality." *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir.1987) (citation omitted).

Rankin fails to meet the reasonableness test of § 455(a). With respect to Rankin's imputation claim, the court finds that a reasonable person would conclude that the irregularities in the trial before Judge Hannum in the 83 case were cured by the vacation of the conviction, and the subsequent reassignment of the second trial in the 83 case to this court.[3] The court further finds that a reasonable person would conclude that the relationship between Judge Hannum and Rankin has not tainted the other judges in this district, as there is no support for Rankin's conclusion to the contrary.[4]

With respect to Rankin's claim that this court is biased and prejudiced, the court finds that Rankin fails to meet the requirement that the alleged bias and prejudice stem from an extrajudicial source. *See Liteky v. United States*, 510 U.S. 540, 544, 554, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (describing requirement as applied to § 144 and applying it to § 455(a)). Rankin alleges that the court cannot be fair because of its involvement in the 83 case. A court's involvement in a prior proceeding, however, ordinarily does not qualify as an extrajudicial source of bias or prejudice. The Supreme Court has suggested that

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings,* do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id.* at 555 (emphasis added). The remarks of this court cited by Rankin certainly do not suggest a deep-seated favoritism or antagonism such that they are exempt from the extrajudicial-source requirement. In addition, even if the extrajudicial-source requirement were met, the court finds that a reasonable person would conclude that the court's remarks do not evidence bias or prejudice against Rankin or in favor of the government that would warrant the court's disqualification. It is well-established that

---

**2.** Rankin quotes the court as stating:
I don't want to be bothered with you, Mr. Rankin. You've caused us enough trouble, we still have cases involving you. There's a perjury trial coming up, isn't there? I'm just saying that Rankin cases go on and on, in this [c]ourt ... [b]ut they're not going to go on here. (Reassignment Mot. ¶ 6 (internal quotation marks and footnote omitted).)

**3.** The court notes that the second trial in the 83 case was fair, and Rankin's sentence was within the applicable guidelines.

**4.** The court notes that Judge Hannum is no longer a judge in this district, and that several judges currently in this district did not serve with Judge Hannum.

judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id.* at 555. Rankin's claim that this court is biased and prejudiced is also refuted in light of the fact that, as noted *supra* p. 448, the court of appeals affirmed Rankin's conviction and sentence in the second trial in the 83 case.

The court therefore denies Rankin's motion for reassignment pursuant to 28 U.S.C. § 455(a).

### 2. 28 U.S.C. § 144

Section 144 provides, in relevant part:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

. . .

A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C.A. § 144 (West 1993). The filing of a § 144 motion does not automatically require a judge to recuse himself or herself; the judge "must first pass on the . . . sufficiency of the motion." *Schreiber v. Kellogg,* 838 F.Supp. 998, 1003 (E.D.Pa.1993). The court finds that Rankin's § 144 motion is insufficient because it suffers from procedural and substantive defects.

■ First, § 144 requires the filing of an affidavit, and Rankin filed no affidavit. Second, § 144 requires that, in the case of a *pro se* movant, the certificate of good faith that accompanies the § 144 affidavit be signed by any member of the bar of the court. *See Thompson v. Mattleman, Greenberg,*

*Schmerelson, Weinroth & Miller,* No. Civ. A. 93–2290, 1995 WL 318793, at *1 (E.D.Pa. May 25, 1995) (holding that *pro se* movant satisfies § 144 provision requiring certificate of counsel of record, if certificate is signed by any member of the bar of the court). Rankin, who was disbarred before filing the instant motion for reassignment, *see infra* p. 452, signed his own certificate of good faith.

The court could end its § 144 analysis here. Nevertheless, the court will explain why Rankin's § 144 motion also fails on the merits. First, Rankin's claim that this court is biased and prejudiced runs afoul of the extrajudicial-source requirement, under the analysis set forth in the court's discussion of 28 U.S.C. § 455(a), *see supra* pp. 449–450. Second, although the court must accept a § 144 affidavit's factual allegations as true, the court need not accept conclusory statements or opinions. *See U.S. v. Vespe,* 868 F.2d 1328, 1340 (3d Cir.1989). The court finds that, once Rankin's § 144 motion[5] is stripped of conclusory statements and opinions, the few factual allegations that remain, even if true, do not establish bias or prejudice that warrants reassignment of this case.

The court therefore denies Rankin's motion for reassignment pursuant to 28 U.S.C. § 144. Having determined that this case should not be reassigned pursuant to either 28 U.S.C. §§ 455(a) or 144, the court addresses Rankin's motion to disqualify and his petition for writ of *coram nobis.*

### B. Motion to Disqualify U.S. Attorney's Office and Pichini

■ Rankin makes numerous allegations, but cites no law, in support of his motion to disqualify. Rankin argues, in essence, that "it strains credibility to believe The Office of the United States Attorney for the Eastern District of Pennsylvania—with Career Prosecutor Pichini as Chief of the Criminal Division—could perform its' [sic] duty to justice [sic] in this case." (Mot. to Disqualify AUSA Pichini ¶ 14.) Rankin alleges, for example, that Pichini: (1) has a conflict of interest

---

5. For the purpose of analyzing the merits of Rankin's § 144 motion, the court treats the motion as a § 144 affidavit in order to avoid the procedural defect that would result from the affidavit's absence.

because Pichini "acted as an investigator, prosecutor, witness and manipulator of all government actions against [Rankin]," (*Id.* ¶¶ 4, 7); (2) wrongfully opposed Judge Hannum's recusal in the 83 case, (*see id.* ¶ 9); (3) committed perjury in this case in connection with his testimony regarding Judge Hannum's conduct in the 83 case, (*see id.* ¶ 8); and (4) "abused his duties as a Prosecutor," (*see id.* ¶ 13), and in doing so "[made] a mockery and farce of the concept [sic] of due process and equal protection of the law," (*see id.* ¶ 14).

Insofar as Rankin seeks to disqualify Pichini from this case, Rankin's motion is moot. Pichini is no longer working at the U.S. Attorney's Office. *See* Shannon P. Duffy and Ritchenya A. Shepherd, *Pichini Moves to Deloitte & Touche*, THE LEGAL INTELLIGENCER, Mar. 9, 1998, at 1.

Insofar as Rankin seeks to disqualify the other prosecutors at the U.S. Attorney's Office for this district, Rankin's motion lacks merit. Most of the allegations upon which the motion is based are substantively identical to allegations contained in Rankin's previous motion to disqualify, (*see* 10/8/92 Mot. to Disqualify (Document No. 86)). Judge Wolin rejected the allegations in denying that motion, and Rankin has not come forward with new evidence to support them. Thus, the allegations fare no better on their second trip through the courts than they did on their first. With respect to new allegations in the instant motion to disqualify, such allegations are unsupported by evidence and the court therefore rejects them. The court therefore denies Rankin's motion to disqualify.

## C. Petition for Writ of *Coram Nobis*

In his petition for writ of *coram nobis*, Rankin asks the court to take the following action with respect to this case: vacate his convictions; order the government to pay back his fines; and set aside all collateral consequences of his convictions. (*See* Br. Supp. Pet. at 50.) Rankin argues, in relevant part, that such a result is required by three Supreme Court decisions, each decided more than two years after Rankin completed his sentence in this case, but which he argues this court must apply retroactively. Rankin further argues that *coram nobis* relief is required to eliminate the continuing consequences of his allegedly invalid convictions.

### 1. Supreme Court Decisions Cited by Rankin

Rankin challenges his § 1001 conviction for making a false statement to a federal agency primarily on the basis of *Hubbard v. United States*, 514 U.S. 695, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995), and *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). In *Hubbard*, the Court held that § 1001 did not criminalize false statements made before a federal court, because "a federal court is neither a 'department' nor an 'agency' within the meaning of § 1001." *Hubbard*, 514 U.S. at 715.[6] The Court explicitly overruled its prior decision in *United States v. Bramblett*, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), which had construed § 1001 as applying to all three branches of government. *See Hubbard*, 514 U.S. at 702, 715; *see also United States v. Brooks*, 945 F.Supp. 830, 831–32 (E.D.Pa. 1996) (discussing *Hubbard* ).[7] Rankin argues that, in light of the *Hubbard* decision, he did not violate § 1001 as it existed at the time of his conviction, because the false statements in his recusal affidavit in the 83 case were made before a federal court.

In *Gaudin*, the Court held that the "materiality" element of § 1001, that is, the ques-

---

**6.** The version of § 1001 that existed at the time of Rankin's conviction, and at the time of the *Hubbard* decision, prohibited, *inter alia*, the making of false statements "in any matter within the jurisdiction of any department or agency of the United States." *See Hubbard*, 514 U.S. at 698.

**7.** In 1996, Congress completely revised § 1001 to specifically prohibit, *inter alia*, the making of false statements "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C.A. § 1001(a) (West 1976 & Supp.1998). The revision, however, also provides:

> Subsection (a) [of § 1001] does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

*Id.* § 1001(b).

tion of whether the false statement at issue was material, is a question that the court must submit to the jury rather than resolve itself. *See Gaudin,* 515 U.S. at 507, 523. The Court explained that a defendant's Fifth Amendment right to due process, and Sixth Amendment right to trial by jury, compelled such a result. *See id.* at 509–11, 522–23. The Court explicitly overruled *Sinclair v. United States,* 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929), a conflicting decision on a similar issue. *See Gaudin,* 515 U.S. at 519–20. In overruling *Sinclair,* the Court also overruled the settled law in this circuit, pursuant to which, at the time of Rankin's conviction, the question of materiality in a § 1001 prosecution was a question of law to be decided by the court. *See, e.g., United States v. Greber,* 760 F.2d 68, 73 (3d Cir. 1985) (relying on *Sinclair* and joining six other courts of appeals). Rankin argues that, in light of the *Gaudin* decision, Judge Wolin violated Rankin's constitutional rights by failing to submit to the jury the question of materiality under § 1001.

Rankin challenges his § 1503 conviction for endeavoring to obstruct justice primarily on the basis of *Hubbard, Gaudin,* and *United States v. Aguilar,* 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). With respect to *Hubbard* and *Gaudin,* Rankin essentially argues that a § 1001 violation is a lesser-included offense of a § 1503 violation. Rankin therefore argues that the *Hubbard* and *Gaudin* decisions, which invalidate his § 1001 conviction, also invalidate his § 1503 conviction. In addition, Rankin argues that the *Gaudin* decision independently invalidates his § 1503 conviction because: (1) materiality is an element of § 1503 in this case; and (2) Judge Wolin failed to submit to the jury the question of materiality under § 1503.

In *Aguilar,* the Court held that a person may be convicted pursuant to the catchall provision of § 1503 [8] only if the act in question "[has] a relationship in time, causation or logic with the judicial proceedings." *Aguilar,* 515 U.S. at 599. To meet this nexus requirement, the act need not be successful, but "must have the natural and probable effect of interfering with the due administration of justice." *Id.* (internal quotation marks and citation omitted). Rankin argues that, in light of the *Aguilar* decision, the court must vacate his § 1503 conviction because the act of submitting false statements in Rankin's recusal affidavit did not affect the government's case-in-chief against him in the 83 case, and thus did not satisfy the nexus requirement.

### 2. Continuing Consequences That Allegedly Flow From Rankin's § 1001 and § 1503 Convictions

Rankin cites a litany of adverse events that he claims are "lingering civil disadvantages that resulted from [Rankin's] invalid convictions under §§ 1001 and 1503." (Reply to Gov't Answer at 6.) These claimed disadvantages include: (1) Rankin's disbarment on August 11, 1994, retroactive to March 6, 1987, (*see* Pet'r App. Ex. 54); (2) the June 18, 1996 revocation of Rankin's teaching certificates from the Pennsylvania Department of Education ("PDE"), on the grounds that he was "convicted of crimes involving moral turpitude," (*see id.* Ex. 51); [9] (3) the decreased likelihood that Rankin can secure the reinstatement of his insurance agent and real estate agent licenses; (4) being ineligible to serve as an officer in his union; (5) the accrual of an additional "strike" for purposes of 18 U.S.C. § 3559(c) (the "federal Three Strikes law"); (6) giving off a "[f]eded [sic] odor of criminality," (Reply to Gov't Answer at 6); (7) being subject to impeachment in future trials; and (8) the payment of the court-ordered fine and assessment.

---

8. The version of the catchall provision that existed at the time of Rankin's conviction, and at the time of the *Aguilar* decision, provided in relevant part:

> Whoever ... corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, instruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C.A. § 1503 (West 1984).

9. On July 17, 1997, the Commonwealth Court of Pennsylvania affirmed the revocation of Rankin's teaching certificates. (*See* Pet'r App. Ex. 50.)

### 3. The Writ of Error *Coram Nobis*

The writ of error *coram nobis* is an ancient writ that was available at common law to correct factual errors in both civil and criminal cases. *See United States v. Morgan*, 346 U.S. 502, 507, 74 S.Ct. 247, 98 L.Ed. 248 (1954) (discussing history of the writ). The writ later was used in criminal cases to correct errors of law as well. *See United States v. Osser*, 864 F.2d 1056, 1059 (3d Cir.1988) (discussing history of the writ). A 1946 amendment to Rule 60(b) of the Federal Rules of Civil Procedure abolished the writ in civil cases. *See* Fed.R.Civ.P. 60(b) (incorporating 1946 amendment). In addition, 28 U.S.C. § 2255 "was intended, in its current form, to be a restatement of the [writ]." *United States v. Essig*, 10 F.3d 968, n. 3 (3d Cir.1993). In *Morgan*, however, the Supreme Court held that pursuant to the All Writs Act, 28 U.S.C. § 1651(a), district courts in federal criminal cases possess the power to grant "this extraordinary remedy," though "only under circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 506, 511. The Court suggested that such circumstances involve "errors of the most fundamental character," where no other remedy was available at the time of trial and "sound reasons exist[ ] for failure to seek appropriate earlier relief." *Id.* at 512 (internal quotation marks omitted). The Court also suggested that the person seeking *coram nobis* relief must overcome the presumption that the previous proceedings in his case were correct. *See id.*

■ According to the court of appeals, the writ of *coram nobis* "is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer 'in custody' for purposes of 28 U.S.C.A. § 2255." *United States v. Stoneman*, 870 F.2d 102, 105 (3d Cir.1989). Meeting these criteria, however, does not guarantee the issuance of *coram nobis* relief. This is because

> other factors must be taken into account. The interest in finality of judgments is a weighty one that may not be casually disregarded. *Where sentences have been served, the finality concept is of an overriding nature,* more so than in other forms

of collateral review such as habeas corpus, where a continuance of confinement could be manifestly unjust.

*Osser*, 864 F.2d at 1059 (emphasis added); *see Stoneman*, 870 F.2d at 106 (holding that the standard for *coram nobis* relief "is even more stringent than that on a petitioner seeking habeas corpus relief under § 2255"). It bears emphasis that

> [t]he writ of error coram nobis is an extraordinary remedy, extremely narrow or limited in scope, which will be issued only under very unusual circumstances.... [It] is not a catch-all by which the propriety of convictions may be litigated and relitigated ad infinitum, and it is not intended to correct all errors occurring at trial.

24 C.J.S. *Criminal Law* § 1611 (1989). As the Supreme Court recently observed, "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 116 S.Ct. 1460, 1468, 134 L.Ed.2d · 613 (1996) (modification in original) (citation omitted). Ultimately, the decision to grant *coram nobis* relief rests in the court's discretion. *See* 24 C.J.S. *Criminal Law* § 1615.

### 4. *Coram Nobis* Relief is Not Warranted in This Case

Rankin completed his sentence in this case and is no longer in custody for purposes of 28 U.S.C. § 2255. He claims that his convictions in this case are invalid for reasons that could not have been asserted at trial because they did not exist at that time. Rankin further claims that his convictions have continuing consequences that *coram nobis* relief would eliminate. Therefore, at first blush, it appears that *coram nobis* relief may be appropriate. Upon closer examination, however, the court finds that it is not. First, Rankin's petition is untimely. Second, Rankin's petition lacks merit because the petition fails to establish that both of Rankin's convictions in this case: (1) are invalid; and (2) have continuing consequences that *coram nobis* relief would eliminate.

### a. Unexplained Delay in Filing

■ At the outset, the court doubts whether "sound reasons exist" to justify the delay of over two years between the decisions in the *Hubbard–Gaudin–Aguilar* trilogy and Rankin's filing of his petition for writ of *coram nobis.* Rankin provides no explanation for the delay. Thus, the court could deny Rankin's petition as untimely. *See United States v. Correa–De Jesus,* 708 F.2d 1283, 1286 (7th Cir.1983) (finding *coram nobis* relief unavailable because movant did not justify 14 year delay between change in law and filing of motion). As the court explains below, however, there are also substantive reasons to deny *coram nobis* relief.

### b. Rankin's § 1503 Conviction is Valid

Under *Morgan,* both of Rankin's convictions in this case are presumptively valid. *See Morgan,* 346 U.S. at 512. The court finds that Rankin fails to overcome this presumption at least as applied to his § 1503 conviction.[10]

■ First, contrary to Rankin's assertions, 18 U.S.C. § 1001 does not describe a lesser-included offense of 18 U.S.C. § 1503. *Compare United States v. Barr,* 963 F.2d 641, 645 (3d Cir.1992) (listing elements of § 1001) *with Rankin,* 870 F.2d at 112 (listing elements of § 1503). Thus, Rankin's argument that his § 1503 conviction is invalid because his § 1001 conviction is invalid, lacks merit.

■ Second, Rankin's argument that *Gaudin* independently invalidates his § 1503 conviction lacks merit. Materiality is not an element of § 1503, *see Rankin,* 870 F.2d at 112, and thus *Gaudin* is irrelevant. Even if materiality were an element, the court finds that *Gaudin* does not apply retroactively to Rankin's case for the reasons explained in *United States v. Swindall,* 107 F.3d 831, 834–

36 (11th Cir.1997) (discussing application of *Gaudin* in light of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)).

■ Finally, assuming *arguendo* that *Aguilar* applies retroactively to Rankin's case, the court finds that it provides no support to Rankin's argument that, because the false statements in Rankin's recusal affidavit did not affect the government's case-in-chief, his § 1503 conviction is invalid. Under *Aguilar,* Rankin's actions did not have to be successful to be punishable under § 1503. *See Aguilar,* 515 U.S. at 599. The only relevant inquiry is whether Rankin's actions "[had] the natural and probable effect of interfering with the due administration of justice." *Id.* (internal quotation marks and citations omitted). At the risk of stating the obvious, the court notes that Rankin submitted an affidavit, containing false factual allegations in support of his recusal motion, directly to the very court that would decide the motion and would be required to accept such false allegations as true. Clearly such actions had the natural and probable effect of interfering with the due administration of justice. Insofar as Rankin's argument draws a distinction between the recusal proceeding and the second trial in the 83 case,[11] the argument lacks merit.

### c. Insufficient Showing of Continuing Consequences Resulting From Disputed Convictions

■ "[C]oram nobis relief is not available if a sentence has been executed unless the conviction carries continuing penalties." *Osser,* 864 F.2d at 1059.[12] Rankin claims to suffer from numerous continuing penalties that directly result from, and thus would be eliminated by, the vacation of both of his convictions in this case. *See supra* pp. 452–453. The court finds, however, that Rankin does not cite the type of continuous penalties

---

10. Because the court finds that Rankin's § 1503 conviction is valid, and because Rankin has not identified any continuing consequences that result solely from his § 1001 conviction, the court need not decide whether Rankin's § 1001 conviction is valid.

11. Rankin evidently considers the former "an ancillary proceeding," and the latter "the gov-

ernments [sic] case in chief." (Reply to Gov't Answer at 13.)

12. The court notes that courts differ in their opinion regarding the type of consequences that warrant *coram nobis* relief. *See Osser,* 864 F.2d at 1059–60.

that warrant *coram nobis* relief, and does not establish that all of the cited continuing penalties result from his convictions in this case.

### i. Rankin Does Not Cite the Type of Continuing Penalties That Warrant *Coram Nobis* Relief

The court finds that Rankin has not cited continuous penalties that are cognizable for purposes of granting *coram nobis* relief. With respect to Rankin's claim that his convictions in this case prevent him from working as a lawyer, teacher, insurance agent, real estate agent, or union officer, the court finds that the possibility that the convictions "preclude[ ] him from obtaining his preferred career choice ... does not constitute a civil disability [that *coram nobis* relief can cure]." *See United States v. Sepulveda*, 763 F.Supp. 352, 357 (N.D.Ill.1991) (rejecting as speculative defendant's argument that vacating conviction would permit him to be police officer again, because "[a] writ of coram nobis can neither rewrite history nor vindicate [defendant] of the underlying dishonest ... acts which gave rise to the challenged indictment"). As in the case of the defendant in *Sepulveda*, Rankin's suggestion that vacating his convictions in this case will result in his readmission to the bar, the reinstatement of his teaching certificates, the reinstatement of his insurance agent and real estate agent licenses, and his employment as a union officer, is speculative.[13]

■ Rankin's claim that his convictions in this case qualify as strikes under the federal Three Strikes Law is incorrect. Under the federal Three Strikes Law, "Congress has prescribed a mandatory sentence of life imprisonment for certain recidivist 'violent' felons." *United States v. Wicks*, 132 F.3d 383, 385 (7th Cir.1997). Only certain "serious violent felonies" and "serious drug offenses" qualify as strikes under the federal Three Strikes Law. *See* 18 U.S.C.A. § 3559(c)(1)(A)(i), (ii) (West 1985 & Supp. 1998). Having reviewed the relevant statutory definitions, *see* 18 U.S.C. § 3559(c)(2)(F) ("serious violent felony"), (H) ("serious drug offense"), the court finds that Rankin's convictions pursuant to 18 U.S.C. §§ 1001 and 1503 do not qualify as strikes.

■ Rankin's objection to being labeled a criminal as a result of his convictions in this case does not justify *coram nobis* relief. As the court of appeals observed, "[d]amage to reputation is not enough." *Osser*, 864 F.2d at 1060.

■ Rankin's argument that his convictions in this case may subject him to impeachment in future trials is correct. *See* Fed.R.Evid. 609(a)(2) (providing that evidence of a witness' conviction for a crime involving dishonesty or false statement is admissible to impeach the witness). Rankin's suggestion that vacating his convictions would foreclose his impeachment, however, is not. Even if Rankin's convictions were vacated, Rankin would still be vulnerable to impeachment, albeit on the basis of the dishonest acts that gave rise to the convictions, rather than the convictions themselves. *See* Fed.R.Evid. 608(b) (permitting inquiry, on cross-examination of a witness, into specific instances of conduct concerning the witness' character for truthfulness or untruthfulness). Thus, *coram nobis* would provide little to no relief from this consequence of Rankin's convictions and accordingly is unwarranted.

---

**13.** In support of this finding, the court notes as follows: (1) Rankin's disbarment is retroactive to March 6, 1987, prior to his indictment in this case, and thus was based, if at all, on more than his convictions in this case; (2) although the PDE revoked Rankin's teaching certificates because of his convictions in this case, (*see* Pet'r App. Ex. 51), vacating the convictions would not preclude the PDE from revoking the certificates because of Rankin's convictions in the 83 case, because the crime in that case could be regarded as a "crime[ ] involving moral turpitude" within the meaning of applicable regulations. *See Rankin v. Dep't of Educ.*, No. 1968 C.D.1996, slip op. at 2, 4, n. 1 (Pa.Commw.Ct. Jul. 17, 1997) (Pet'r App. Ex. 50); *see also* Pa. Stat. Ann. tit. 24 § 2070.5(a)(11) (West 1992 & Supp.1997) (requiring revocation of teaching certificate upon conviction of crime involving moral turpitude); 22 Pa.Code § 237.9(a) (1998) (defining moral turpitude); (3) Rankin has not applied for reinstatement of his insurance agent and real estate agent licenses; and (4) Rankin has not sought union employment, and his claim that, because of his convictions in this case, he is barred by statute from holding union office, is unsupported by any evidence.

■ Finally, Rankin may not use the writ of *coram nobis* to recover the payment of fines and assessments in this case. *See Osser,* 864 F.2d at 1059–60 (discussing *United States v. Keane,* 852 F.2d 199, 203 (7th Cir. 1988) (holding that financial penalties of criminal convictions "do not entail continuing legal effects of a judgment" justifying *coram nobis* relief)).

### ii. Rankin Does Not Show That All of the Cited Continuing Penalties Result From His Convictions in This Case

For *coram nobis* relief to be appropriate, Rankin must establish that his convictions in this case are the source of the continuous penalties he cites. The court finds, however, that several of the cited continuing penalties, such as Rankin's disbarment, *see supra* note 13, the added difficulty in securing the reinstatement of his insurance agent and real estate agent licenses or holding union office, and even the air of criminality that allegedly surrounds him, could stem from Rankin's uncontested felony convictions in the 83 case. Apart from making the sweeping and incorrect statement that the 83 case "[has] absolutely nothing to do with this proceeding," (Reply to Gov't Answer at 1),[14] Rankin does not refute this possibility. Accordingly, the court finds that, with respect to the continuing penalties cited above, Rankin does not establish the causal relationship required to warrant *coram nobis* relief.

For all the reasons described above, *see supra* pp. 453–456, the court denies Rankin's petition for writ of *coram nobis.*

### III. CONCLUSION

Over eight years ago, Judge Wolin, in imposing sentence on Rankin in this case, stated that he had "[written] the final chapter in the litigation entitled *United States v. Kevin Rankin*."[15] He was wrong. Although the court has brought this case to a just resolution today, the court declines to make a similar pronouncement.

For the reasons described above, the court denies: (1) Rankin's motion to reassign this case outside the Eastern District of Pennsylvania; (2) Rankin's motion to disqualify the U.S. Attorney's Office for this district, particularly Assistant U.S. Attorney Louis R. Pichini, from this case; and (3) Rankin's petition for writ of *coram nobis.*

An appropriate order follows.

### *ORDER*

AND NOW, this 26 day of March, 1998, upon consideration of: (1) Kevin J. Rankin's Motion for Reassignment Outside the Eastern District of Pennsylvania; (2) Rankin's Motion to Disqualify AUSA Pichini From Proceedings in This Case; (3) Rankin's Petition for Writ of Coram Nobis; (4) Rankin's Petitioner's Appendix; (5) the Government's Answer Opposing Kevin J. Rankin's Petition of Coram Nobis and Motion to Disqualify; and (6) Rankin's Reply to Government's Answer Opposing Petition for Writ of Coram Nobis, it is hereby ORDERED that the Motions and the Petition are DENIED.

---

**14.** Rankin dismisses the 83 case as "involving three uneventful telephone conversations," (Reply to Gov't Answer at 1), and accuses the government of attempting to "contaminate this Petition and its legal issues" by citing the 83 case as an alternative source of continuing penalties. (*Id.*) The so-called "uneventful telephone con-

versations" led to a felony conviction, however, and the relevance of that conviction and its consequences to the current proceeding is plain.

**15.** Wolin, J., 9/27/89 Reasons For Sentence (Pet'r App. Ex. 46) at 1.